[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 609 
The plaintiff filed a complaint in this cause in which it seeks to have this court declare that an ordinance adopted by the defendant, the Borough of Sea Girt, known as Ordinance 101, adopted on April 11, 1933, and the amendments thereto and supplements thereof, are unconstitutional, and that they be declared to be unreasonable and arbitrary, as to the plaintiff, on the ground that the use of the hereinafter *Page 610 
mentioned premises by the plaintiff constitutes a conforming use, and that the court restrain the defendant from proceeding with two complaints now pending in the Recorder's Court in the Borough of Sea Girt against the plaintiff, as well as further proceedings thereon, in which violations are charged by the defendant against the plaintiff.
In a stipulation signed by the parties it was agreed that the plaintiff contends that its use of the premises in question is permitted by virtue of the establishment of the use thereof prior to and since the enactments of the zoning ordinances and is therefore a nonconforming use, protected and continued underN.J.R.S. 40:55-48, and that said use has not been enlarged or extended.
The defendant contends that the use is in violation of the ordinances mentioned, and that the use thereof by the plaintiff at the present time is not protected by the statute above mentioned.
The stipulation also provided that the transcript of the testimony taken before the Recorder of the Borough of Sea Girt on December 22, 1947 be used as evidence in the issues before this court as well as affidavits furnished on motions made in this cause.
Ordinance No. 101, adopted April 11, 1933; provides in Section 5 as follows:
"In District 4 no building or premises shall be used and no building shall be erected or altered or arranged, intended or designed to the use for any of the following specific trades or industries;
"1. Manufacturing of any kind, except such as is incidental to the carrying on of a retail business therein. * * *
"10. Warehouses."
Ordinance No. 177, adopted on November 21, 1944, was an amendatory ordinance of Ordinance 101, particularly wherein the premises occupied by the plaintiff is placed in a residential zone wherein no building could be erected or used except for a one-family dwelling. Ordinance No. 177 contained a prohibition against the use of buildings for "warehouses" as mentioned in Ordinance 101.
The premises in question is occupied by a one-story cement-block building with stucco finish and rectangular in shape. The *Page 611 
affidavit of Paul Newman submitted on behalf of the plaintiff, states that he acquired title to this property from his father in 1914 and erected thereon the building last mentioned. In 1931 (before Ordinance 101 was adopted) the building was used during the summer months for the storage of automobiles, gasoline and oils for automobiles, under lease to the Stockton Hotel, and in the winter months storage of small boating craft. In other summer months the premises were rented for garage purposes, and in 1940 the storage of trucks and equipment of a jetty contractor. "From September 1942 to July 1942" (this is understood to mean from July to September in the year mentioned), the Red Cross used the premises for the storage of bandages and like materials From August 1, 1942 to May 1944 the Dackerman Motor Company stored new cars in the premises; from May 31, 1944 to June 15, 1946 the premises were vacant; from June 1946 to September 1946 the premises were rented to Chilitzi Brothers who operated the premises as a garage and for the storage of automobiles, at which time it was rented to the plaintiff, who has since continued to occupy the premises to the present time.
Newman's affidavit also contains statements that the zoning ordinance of 1933 placed his property in a business zone and the 1944 amendment placed the premises in District 1, making it a residential zone. His affidavit contains the further statement that he rented the property to the plaintiff company,
"for the storage of automobile trucks, gasoline and oil, and for temporary storage of other commodities incidental to the manufacturing business of the plaintiff, whose main plant is located at Manasquan, New Jersey."
It appears from the evidence before this court that he was tried and convicted before the Recorder's Court in Sea Girt, New Jersey, on December 22, 1947 for alleged violations occurring on July 7, 1947 and August 12, 1947 of paragraph one of section 4 of the Zoning Ordinance, charging that the premises was used as a warehouse and for the storage of food products contrary to the aforesaid ordinance. These *Page 612 
convictions are awaiting hearing on appeal to the County Court.
In the affidavit of Robert Crompton, who is president of the plaintiff company, appears the statement:
"There are five of our company trucks stored there (referring to the cement-block stucco garage) over night, together with certain commodities that are allied to the product we manufacture at our main plant in Manasquan, New Jersey, namely, potato chips. There are also stored paper containers, cartons and boxes which are used to package our product for retail distribution. We also, from time to time, store surplus items which cannot be accommodated at our Manasquan plant, and they are stored on the premises in question temporarily until there is available space at our main plant. Usually the temporary period is from ten days to two weeks maximum."
"There has been stored from time to time tin cans or containers which are received in car-load lots from the Continental Can Company, with a capacity of 12 ounces each, and are put to use and the pile substantially reduced during the summer months when there is a greater demand for our products."
"from time to time, motor oil for use in the company's trucks and on one occasion some vegetable oil temporarily stored until some space could be found at the main plant. Storage was the purpose for which we leased the premises in question, and the use that the premises has been put to during our occupancy. It would seem futile to lease such a sizeable premises for storage purposes and to have it limited to a single purpose."
The deposition of Ward Brasch discloses that he was the Borough Clerk of the Borough of Sea Girt and that the premises in question was known as the Newman Garage; that it was a business zone in 1933, and states that at the time of the adoption of Ordinance 101 in that year the Newman Garage was used as a garage.
In depositions taken on behalf of the defendant in this cause, William H. Panz testified that he was the Chief of Police of the Borough of Sea Girt, that he was at the premises on August 12, 1947 and also on July 7, 1947, and at that time the premises were under the residential district ordinance as District No. 1. On July 7th he looked in the building when the door was opened and he states that he saw containers that looked like steel drums of fifty gallon capacity, and on the west and east side of the garage he saw cartons "stacked up" behind a lattice enclosure. He looked in other *Page 613 
parts of the building and saw more cartons and more oil drums and metal containers which bore the name of "Quinlan Pretzels". He further testified that the premises were used for other purposes than a garage. He visited the premises again on August 12, 1947 and saw the same conditions as in his visit on July 7, 1947; that the quantities might have been greater; that some of the articles mentioned were situated on one side and some on the other, that there was a concrete or paved strip down the center of the building, and that beside this place there was a lattice enclosure which was on the west inside of the garage, and that there was stored therein the articles heretofore mentioned; that the Crompton automobiles passing in and out of the premises contained the inscription, "potato chips", and that the use of the premises made by the Crompton Company was detrimental to the health or welfare of the Borough of Sea Girt; and that the inscription on the outside of the building was, "Crompton Food Products, or something like that, food distributors." He further stated that the use of the premises prior to 1933 and thereafter was for the use and storage of automobiles, and at one time Red Cross materials.
Under R.S. 40:55-48, "Any nonconforming use or structure existing at the time of the passage of an ordinance may be continued upon the lot or in the building so occupied and any such structure may be restored or repaired in the event of partial destruction thereof."
It appears in the proofs furnished to the court and the admissions of counsel in their briefs, that the use of the premises in question as a garage, and the activities and necessities arising out of such a use, while not conforming to the ordinance may be continued.
The uses of the premises by the plaintiff company are restricted to the non-conforming use that was in existence at the time the original ordinance and its supplements and amendments were adopted.
In "Words and Phrases", the term "warehouse" is defined as a building or place adopted to the reception and storage of goods and merchandise. And in a more limited sense, it *Page 614 
is the building or place in which a warehouseman deposits the goods of others in the course of his business.
It seems clear that the use of a premises as a garage is an entirely different use than used as a storage or warehouse, whether temporary or permanent, for materials that are not connected with and necessary for the proper storage and operation of automobiles. There may be some incidental storage in a garage such as gasoline, oil, automobile parts, but such an incidental storage is not contemplated as a storage for food products or other oils and materials.
Under R.S. 40:55-30 a municipality is empowered and may pass ordinances to limit and restrict specified districts, buildings and structures, and the extent to which they may be used and the exercise of such authority is deemed to be within the police power of the municipality.
R.S. 40:55-36 provides for the appointment of a board of adjustment and in the case of ordinances such as existing in this case that the said board of adjustment may, in appropriate cases, and subject to appropriate conditions and safeguards, make special exceptions to the terms of the ordinance in harmony with its general purpose and intent and in accordance with the general rules therein contained.
In R.S. 40:55-39 and they have power to hear and decide appeals where it is alleged there is error in any order, requirement or determination made by an administrative officer in the enforcement of any ordinance adopted.
In the briefs submitted in this case it appears that there is a board of adjustment in the Borough of Sea Girt and that the plaintiff by-passed this board, as no application was made by the plaintiff for an adjudication on the extent of the use to which the plaintiff made of the building in question; consequently, this court is not called upon to decide whether the board of adjustment would have made an exception in the case of the plaintiff. This court should not interfere and substitute its judgment for that of the local agency entrusted with the quasi judicial function of determining such issues. There is a presumption in law in favor of the validity of the action of the local authority and *Page 615 
the burden is on the land-owner or occupant to establish by evidence that the denial is arbitrary. Citing Peterson v. ThePalisades Park, 127 N.J.L. 190; Silvester v. Princeton,104 N.J.L. 18.
It should be further understood that the board of adjustment and not the land-lord or lessee is chargeable with responsibility of determining whether the statutory prerequisites have been met and what is required to serve the public need.
It is not a good ground for variance that the nonconforming use would be more profitable or advantageous to the land-owner or lessee. Citing Brandon v. Board of Commissioners of Montclair,
124 N.J.L. at 135; Scaduto v. Bloomfield, 127 N.J.L. 1.See also Durkin Lumber Co. v. Fitzsimmons, 106 N.J.L. page 183, where a case before the Court of Errors and Appeals on a judgment from the Supreme Court affirmed a conviction of the appellate for violation of the provisions of a zoning ordinance in the town of Bellville.
In Burmore Co. v. Smith, 124 N.J.L. 541, it was held; that the use of a property at the time of passage of a zoning ordinance is the authority that this standard for determining the use thereof, which may be continued after passage of the ordinance. The non-conforming use must be the same before and after the passage of the ordinance. Evidently what the plaintiff intends to do in this case is to extend or enlarge the conforming use of the structure. In the Burmore case, supra, the Supreme Court and Court of Errors and Appeals held that the proofs and issues in the case at bar did not show that the ordinance was not unreasonable. It should be understood that the spirit of the ordinance was to restrict rather than to increase any conforming use.
This court holds and determines that the ordinances referred to in this case are not unreasonable, arbitrary or unconstitutional and that they are enforceable. *Page 616