Merrimack,
No. 4256.

FAXON D. BOWEN

*v.*

MERCHANTS MUTUAL CASUALTY CO. *& a.*

Argued March 3, 1954.

Decided June 23, 1954.

*Upton, Sanders & Upton* (*Mr. Richard F. Upton* orally), for the plaintiff.

*Burns, Calderwood & Bryant* (*Mr. Bryant* orally), for the defendant Merchants Mutual Casualty Co.

*McLane, Davis, Carleton & Graf* and *Robert A. Raulerson* (*Mr. Raulerson* orally), for the defendant Milton Makris.

GOODNOW, J. Clause V of the basic policy issued by the Merchants Mutual Casualty Co. to Milton Makris is concerned with "Use of Other Automobiles" and is stipulated by section 13 of the policy to provide "excess insurance over any other valid and collectible insurance available to the insured." Before considering the validity of the specific grounds advanced by the company in avoidance of liability under the provisions of this clause, however, it is first necessary to determine which of them may now be advanced by the company in the light of the claims of waiver and estoppel raised by the plaintiff.

Prior to and at the time of the accident, Milton Makris was the proprietor of an ice delivery business in Manchester and his brother Socrates was an independent contractor engaged in the trucking of gravel. A few days previous to August 31, 1949, Milton had injured himself while delivering ice and the two

brothers had agreed to exchange positions temporarily until Milton's injury had healed. Milton agreed to drive Socrates' truck and make deliveries of gravel for him and Socrates agreed to drive Milton's truck and deliver ice for him. Under their arrangement, the income from the gravel delivery business was to belong to Socrates and that from the ice delivery business was to belong to Milton and neither was to receive any monetary payment from the other while the temporary arrangement was in effect. At the time this agreement was made, the condition of Milton's injury was such that it would probably have healed sufficiently in about a week to permit the resumption by him of ice deliveries. The gravel truck was actually operated by Milton for half a day on August 29, all day on August 30, and was in the course of the fifth delivery of the day at about 2:30 P. M. on August 31 when the accident occurred. Subsequent to that date, the business of hauling gravel slackened and Milton drove the truck only part time until he returned to his ice delivery business on September 5, 1949.

The Makris brothers had each purchased and received delivery of their respective policies at the Landregan Insurance Agency in Manchester. This agency was a licensed insurance broker but was not an agent of the Merchants Mutual Casualty Co. Within three days after the accident, Milton went to the office of this agency and reported the accident on a form furnished by it. The agency notified Socrates' insurer, the American Mutual Liability Insurance Co., of the accident but did not notify the Merchants Mutual Casualty Co. Both brothers were served with process in the plaintiff's actions seeking damages on December 2, 1949, and then learned for the first time the amount of damages claimed by the plaintiff which were alleged to be $15,000. These writs were turned over to the American Mutual Liability Insurance Co. On the same day, Milton's personal attorney wrote to the Merchants Mutual Casualty Co. informing it that suit had been commenced on account of the accident of August 31, 1949, and that the damages claimed were in excess of the coverage afforded by Socrates' policy. The company acknowledged receipt of this letter on December 5, 1949, stating also that the representative of the American Mutual Liability Insurance Co. had been contacted for information and that as soon as it had been received and Milton's policy had been examined, it would "advise you relative to coverage." By letter dated January 19, 1950, written from

the company's home office by its vice-president in the legal department, Milton was informed that Merchants Mutual Casualty Co. disclaimed any and all liability under his policy.

This letter of disclaimer stated that the company received the letter from Milton's attorney on December 3, 1949; that "the purpose of notifying us of the accident was because an action had been instituted in the Federal Court by the injured party demanding damages in excess of the coverage on the truck you were operating"; and that this letter from Milton's attorney was the first notice of the accident which it had received. The balance of the letter is as follows:

"Subsequent investigation carried on by the company revealed that on August 31, 1949, while you were operating a Diamond T truck loaded with stone, you struck a pedestrian named Faxon Bowen, in Hooksett, New Hampshire. The truck you were operating at the time was owned by your brother, Socrates. The company also learned that the reason you were operating your brother's truck at the time was because you had injured your chest a few days previously and it was agreed between your brother and yourself that it would be easier for you to operate his truck delivering stone and gravel than to operate your own truck and deliver ice because of the necessity of carrying the ice on your shoulder. The agreement became effective with your brother, Socrates, driving your truck and delivering the ice and you in turn driving Socrates' truck and delivering the sand and gravel. It was mutually agreed also that each one was to receive the income from his respective business. In other words, the money earned by you while operating Socrates' truck was to go to him and the money earned by Socrates while operating your truck and delivering the ice was to go to you.

"We draw your attention to Insuring Agreement V of your policy which is entitled 'Use of Other Automobiles,' please refer particularly to sub-division b reading in part as follows:

" '(b) This insuring agreement does not apply:

(1) ——————————————————————————

(2) to any automobile while used in the business or occupation of the named insured or spouse except a private passenger automobile operated or occupied by such named insured, spouse, chauffeur or servant:'

"In view of the fact you were operating a truck in your business or occupation at the time of the happening of the accident, this

letter will serve to advise you that the company hereby disclaims any and all liability to you under the above numbered policy on account of any claims, demands, losses, suits or judgments which have resulted or which may hereafter result to you arising out of the accident mentioned above."

On February 7, 1950, Milton's attorney took issue with the company's assertion that the automobile involved was being used in Milton's business or occupation at the time of the accident. On February 14, 1951, he again reviewed by letter the undisputed facts as to the circumstances under which Milton was operating his brother's truck, asserted that the specific exclusion clause relied on by the company did not apply and demanded that the company join in the defense of the action. The record indicates no reply to either of these letters from the company and no action on its part to either change its position in any way or participate in the defense. Thereafter, in April, 1951, the plaintiff's action at law was tried and resulted in a verdict for the plaintiff against both Socrates and Milton Makris. The defense was borne solely by the American Mutual Liability Insurance Co., and the personal attorney for Milton did not participate.

During the trial, exceptions were taken for the defendants but before the time for appeal had expired, Milton was advised that his brother's insurance company planned no appeal and would pay $5,000 on the verdict unless Milton and his brother desired to appeal at their own expense. The question of whether to appeal was left to Milton's attorney and he decided not to do so. "The following factors figured in the decision: (a) his opinion that the ground of disclaimer by Merchants Mutual was not valid; (b) the opinion of counsel for the American Mutual that an appeal was not justified under all the circumstances; (c) his belief that the most that could be obtained on appeal was a new trial. All of these factors were of substantial weight in his decision not to appeal." Until the filing of its answer in the present action on December 5, 1952, the sole ground for disclaimer given by Merchants was that which it stated in its letter of January 19, 1950, to Milton.

Under these circumstances, it seems clear to us that the company waived its right to now assert in avoidance of liability the insured's failure to give notice of the accident "as soon as practicable" after its occurrence and to "immediately forward to the company every . . . summons or other process," in violation of conditions

numbered 1 and 2 of the policy. Waiver and estoppel are not interchangeable in the law of insurance but a substantial difference exists between them. *Fitch Co.* v. *Continental Ins. Co.,* 99 N. H. 1. A waiver is the voluntary relinquishment of a known right. *Therrien* v. *Maryland Cas. Co.,* 97 N. H. 180, 181. It is essentially unilateral in its character, no act of the insured being necessary, (*Id.,* 182) and involves two principal considerations, actual knowledge of the existence of the right and an intention to relinquish it. 16 Appleman, Insurance Law and Practice 613.

It is not disputed by the company that on January 19, 1950, it was fully aware of the lapse of time between the date of the accident and the date upon which it first received notice of the accident's occurrence as well as of the fact that process which had been served upon the insured had not been forwarded to it. The company claims, however, that its letter indicated no voluntary or intentional abandonment by it of the defenses afforded to it under the terms of the policy by reason of this delay and failure.

The intention to relinquish a known right need not be expressed in explicit language but may be based "upon conduct under the circumstances justifying an inference of a relinquishment of it." *Kilgore* v. *Association,* 78 N. H. 498, 502. An implied waiver exists "if the evidence indicates an actual intention of foregoing a right." *Therrien* v. *Maryland Cas. Co.,* 97 N. H. 180, 183. In its letter of January 19, 1950, the company plainly stated its knowledge of the date of the accident and the date on which it first received notice of the accident's occurrence. It referred to the commencement of an action against the insured on December 2, 1949, and knew of his failure to forward to the company the writ which had been served upon him. It disclaimed liability, however, upon a single policy provision, independent of and totally unrelated to those concerned with notice of accident and forwarding of process, without comment upon the latter and without any indication that the right to avoid the policy for any other breach then known to it would later be raised. The language of the letter, in the light of the company's knowledge, is such as to establish an actual intention to forego the company's rights in connection with the requirements of the policy both as to notice of the accident and the forwarding of process.

In its letter of January 19, 1950, the company specifically disclaimed liability because of the provisions of subsection (b)

(2) of clause V of the basic policy issued by it, the pertinent parts of which clause are as follows:

"If the named insured is an individual who owns the automobile classified as 'pleasure and business' . . . such insurance as is afforded by this policy with respect to said automobile applies with respect to any other automobile, subject to the following provisions:

"(b)   This insuring agreement does not apply:

   (1) to any automobile . . . furnished for the regular use of the named insured . . .

   (2) to any automobile while used in the business or occupation of the named insured . . . except a private passenger automobile . . . . "

In addition to its originally stated ground for disclaimer, the company now seeks to avoid liability because of the provisions of subsection (b) (1) and to show that clause V is inapplicable in its entirety because the insured's automobile was not "classified as 'pleasure and business.' "

The plaintiff contends that the company waived these additional defenses to the policy and is now estopped to assert them. His claim of waiver cannot be supported. The evidence does not clearly establish any actual knowledge of the application of these particular rights on the part of the company at the time of its letter of January 19, 1950. *Therrien* v. *Maryland Cas. Co.*, **97** N. H. 180, 182.

The question of whether the company is estopped to assert either or both of these defenses depends upon whether some act, conduct or non-action of the company has been reasonably relied on by the insured to his prejudice. *Fitch Co.* v. *Continental Insurance Co.*, 99 N. H. 1; *Therrien* v. *Maryland Cas. Co., supra,* 182.   On January 19, 1950, the company had presumably examined Milton's policy as it had indicated it would do in its letter of December 5, 1949, and had fully informed itself as to the reasons why and the circumstances under which Milton was operating his brother's truck at the time of the accident. In its letter of disclaimer, it recited these facts in considerable detail. It then drew the insured's attention to clause V of his policy entitled "Use of Other Automobiles," noted the existence of subsection (b) (1) without reciting its terms and specifically quoted the language of subsection (b) (2) on which it plainly and unequivocally based its disclaimer. The letter contained no reservation of defense other

than the one specified. It stated in effect that the coverage provided by the policy extended to use of other automobiles under clause V except for the provisions of subsection (b) (2) which made the insuring provisions inapplicable to "any automobile while used in the business or occupation of the named insured."

The language of clause V clearly provides that the coverage afforded for "Use of Other Automobiles" shall apply only if the insured vehicle is classified as "pleasure and business." While it is apparent that in item 4 of the declarations of the policy, where space is provided in which the "purpose of use" of the vehicle may be indicated, neither "pleasure and business," "commercial" nor "other" is checked, it could hardly be expected by the insured that four years after such a statement as that contained in its letter of January 19, 1950, the company would seek to avoid liability because the policy itself, of which it had full knowledge, did not designate that the vehicle was to be used for "pleasure and business." Nor could he expect that almost three years later, the company would seek to apply the same facts which it had recited to support its disclaimer on the grounds that Socrates' truck was being "used in the business or occupation" of Milton to support a claim that the truck had been "furnished for regular use" to Milton. He was reasonably justified, after January 19, 1950, in relying upon the plain implication of the company's letter that there would be coverage under clause V but for the provisions of subsection (b) (2).

That the insured did so rely to his prejudice cannot be doubted. In his letters of February 7, 1950, and February 14, 1951, to the company, Milton's personal attorney took issue with the company's interpretation of the provisions of subsection (b) (2), and demanded that the company defend the action. At the trial of the law action in April, 1951, Milton's attorney did not participate. After the verdict, when it became necessary to consider the feasibility of an appeal, "substantial weight" was given by Milton's attorney, in reaching his decision not to do so, to three factors, one of which was "his opinion that *the ground* of disclaimer by Merchants Mutual was not valid." (Emphasis supplied). It was not until these acts of reliance were irrevocably completed that the company disclosed its intention to assert these two additional defenses. We think it is now estopped to do so. The same conclusion applies to the defendants' motion to reopen for the purpose of amplifying its defense that the use of Milton's truck

was not classified as "pleasure and business."

There remains for consideration the claim of the company that it is relieved from responsibility under clause V because of subsection (b) (2) which provides that "use of other automobiles" coverage shall not apply "to any automobile while used in the business or occupation of the named insured." In support of this claim, it is argued by the company that for the period during which Milton was operating the gravel truck, his business or occupation was the making of gravel deliveries.

The test for interpreting a contract of insurance is the meaning a reasonable person in the position of the insured would give to its terms. *Farm Bureau Ins. Co.* v. *Manson,* 94 N. H. 389, 392. The words "business" and "occupation" may have various meanings under particular circumstances but in general they are each commonly used in reference to the work in which one is regularly or usually engaged. See *Canney* v. *Insurance Co.,* 88 N. H. 325, 327. "One's business . . . is the activity upon which he spends the major portion of his time and out of which he makes his living." *Employer's Liability Assur. Corp.* v. *Accident & Cas. Ins. Co.,* 134 F. (2d) 566, 568. Neither "business" nor "occupation" is generally understood to mean "an isolated or . . . temporary adventure in another line of endeavor." *Farmers Auto &c. Exch.* v. *Calkins,* 39 Cal. App. (2d) 390, 394.

Prior to this accident, the business to which Milton had devoted his time and of which he was the proprietor had been his ice delivery business. At the time of the accident, he still owned that business but had temporarily exchanged positions with his brother for about a week because of his incapacity to make his ice deliveries. He had not abandoned his ice business and entered upon a new venture but intended to and did return to it as soon as he was physically able to do so. His income while hauling gravel was dependent upon his ice delivery business and not upon the amount of gravel which he hauled. Under these circumstances, no reasonable person in Milton's position would consider that either his business or his occupation at the time of the accident was other than the ice business to which his activities were primarily devoted and from which he derived his income. Nor could it be thought by a reasonable man in the insured's position that in operating Socrates' truck in hauling gravel, he was in fact engaging in his principal activity of ice delivery because by doing so he was making it possible for his ice delivery business

to continue through his brother Socrates. Milton was not operating Socrates' truck in Milton's own business or occupation, within the meaning of this policy, at the time of the accident.

The company is obligated to pay to the plaintiff the balance of the judgment and costs recovered by him in his action at law and to pay interest from the date of judgment. By the provisions of its policy, the company agreed, as to actions to recover for bodily injury, that in addition to damages, it would pay "all costs taxed against the insured . . . and all interest accruing after entry of judgment" within the limits of the policy. In choosing to stand upon an invalid disclaimer and not participate in the defense of the action at law, it could not avoid its obligation to pay "all costs taxed against the insured" in connection with the plaintiff's action any more than it could avoid its obligation to pay "all sums which the insured shall become legally obligated to pay as damages." When the verdict in that action went to judgment, the obligation of the Makris brothers became fixed, its total being the amount of the verdict and costs. Of this total, another insurance company has paid $5,000. The action before us is concerned solely with whether Merchants Mutual is obligated to pay the unpaid balance of this liquidated amount. The company's disclaimer having been determined to be without merit, it is obligated under its policy to pay the amount of this balance and to pay interest on it from the date of judgment.

The answer to both questions is in the affirmative.

*Remanded.*

All concurred.