BARRETT FISHER [FRANCES FISHER, ADMINISTRATRIX, SUBSTITUTED PLAINTIFF] *v.* BOARD OF ZONING APPEALS OF THE TOWN OF MONROE ET AL.

INGLIS, C. J., BALDWIN, WYNNE, DALY and COVELLO, Js.

Argued April 3—decided May 8, 1956

*William F. Healey, Jr.,* for the appellant (plaintiff).

*Benjamin H. Gilman,* for the appellees (defendants Swann).

*Raymond W. Beckwith,* for the appellee (named defendant).

BALDWIN, J. The zoning commission of the town of Monroe issued a permit on August 13, 1953, to Barrett Fisher for the construction of a tank for the storage of fuel oils in a district zoned for business. Monroe Zoning Regs., § 8(B)(2)(1948). Fisher did not begin work on the tank until mid-October, 1953.

On November 13, the defendants Swann appealed from the action of the zoning commission to the zoning board of appeals. A hearing was held on November 30, when all of the parties, including Fisher, appeared and were heard. The board reversed the action of the commission. Fisher then appealed to the Court of Common Pleas, alleging that the zoning board of appeals, in reversing the action of the zoning commission, acted illegally, arbitrarily, and in abuse of its discretion. The court sustained the board and Fisher then took an appeal to this court. Since that time Fisher has died. His administratrix has continued the appeal and will be referred to hereinafter as the plaintiff.

The territory of Monroe is largely rural. The zoning regulations create three types of districts: (1) residential and farming, A, B and C; (2) business; (3) industrial. Monroe Zoning Regs., § 2(A) (1948). The use of the tank by the plaintiff consists in the storage of fuel oils brought to it by trucks. The oil is withdrawn into other trucks as needed for local delivery. There is no structure at the location other than the tank; no office or telephone is maintained there; no sales are consummated on the premises, which are visited by workers only when oil is placed in or withdrawn from the tank.

The first issue decisive of the case is whether the use which the plaintiff is making of these premises is a business use within the terms of the zoning regulations. The regulation relating to uses in the business district states what uses are proscribed instead of enumerating what uses are permitted. The prohibition pertinent to this case is general in its language. It forbids in the business district "[a]ny kind of manufacture or processing other than the manufacture or processing of products clearly in-

cidental to the conduct of a retail business conducted on the premises." Monroe Zoning Regs., § 3(B)(1) (1948). The use regulations for the business district are set forth in the footnote.[3]

We are called upon to construe this regulation. Zoning regulations are in derogation of the right to use private property, and they should not be extended by construction beyond the fair import of their language. *Service Realty Corporation* v. *Planning & Zoning Board of Appeals,* 141 Conn. 632, 638, 109 A.2d 256; *Langbein* v. *Board of Zoning Appeals,* 135 Conn. 575, 580, 67 A.2d 5; 1 Rathkopf, Zoning & Planning (3d Ed.) § 3. Words used in legislative enactments "shall be construed according to the commonly approved usage of the language." General Statutes § 8890; *State ex rel. Higgins* v. *Civil Service Commission,* 139 Conn. 102, 114, 90 A.2d 862; 1 Yokley, Zoning Law & Practice (2d Ed.) p. 466. With these standard rules of construction in mind, we inquire whether the designation "Business District," as used in the regulations, includes the plaintiff's activities, and whether the prohibition quoted above excludes them. The word "business," used broadly, embraces everything about

[3] "SECTION III: PERMITTED USES . . . B. BUSINESS DISTRICT

In the Business District no building, structure, premises or land shall be used, and no building erected or structurally altered which is arranged, intended, or designed to be used for:

1. Any kind of manufacture or processing other than the manufacture or processing of products clearly incidental to the conduct of a retail business conducted on the premises.

2. Carousel, roller coaster, merry-go-round or similar amusement devices, except temporarily when conducted for the benefit of charity, religion, education or of local organization of public benefit and not for profit.

3. Storage or baling of scrap of any kind.

4. Junk yard for automobiles or other junk.

5. Garbage disposal or Reduction Plant.

6. Garbage or Refuse Dump."

which one can be employed; in a narrower sense, it signifies a calling for the purpose of a livelihood or profit. *Easterbrook* v. *Hebrew Ladies Orphan Society,* 85 Conn. 289, 295, 82 A. 561; see *Massolini* v. *Driscoll,* 114 Conn. 546, 553, 159 A. 480; *Bowen* v. *Merchants Mutual Casualty Co.,* 99 N.H. 107, 115, 107 A.2d 379; 5 Words & Phrases (Perm. Ed.) p. 972. It is reasonable to assume that the regulations concerning the business district express an intent to permit any business not expressly excluded by them, if it is conducted so as not to constitute a nuisance. *Kirk* v. *Mabis,* 215 Iowa 769, 776, 246 N.W. 759; 2 Yokley, op. cit., § 214.

The defendants claim that the plaintiff uses the premises on which the tank is located solely for the storage of fuel and that no business in the commonly accepted sense of that term is carried on there. An activity like the storage of fuel, they assert, can properly only be located in the industrial district, wherein "any manufacturing, industrial operation, wholesale business, warehouse and any uses permitted" in the other districts are allowed, "provided such use is not noxious by reason of the emission of dust, odor, smoke, gas, fumes, noise or vibration." Monroe Zoning Regs., § 3 (C) (1948). In short, the defendants say, the use is that of a warehouse, which is permitted only in an industrial district. Webster's New International Dictionary (2d Ed.) defines "warehouse" as "[a] storehouse . . . for wares, or goods. The term is broadly used, and may include any structure used to hold goods, stores, or wares . . . ." Even if we were to assume that a broad interpretation of this term would include a tank for the storage of fuel and so permit such a tank in the industrial district, it does not necessarily follow that because the use is permitted in the in-

dustrial district it is excluded from the business district under the terms of the prohibition relating to uses therein. Moreover, the term "warehouse," as used in the law, ordinarily means a building for the reception and keeping of goods and, in a more restricted sense, a building where goods of others are stored for hire. *Crompton & Co.* v. *Borough of Sea Girt*, 1 N.J. Super. 607, 613, 63 A.2d 834. It may be that the plaintiff maintains no office or telephone on the premises where the tank has been placed. Nevertheless, the premises, together with the tank, are used in connection with the retail sale and delivery of fuel oils. The operation, under the peculiar circumstances of this case, is essentially a retail business. Furthermore, the use does not fall within the prohibition against "[a]ny kind of manufacture or processing other than the manufacture or processing of products clearly incidental to the conduct of a retail business conducted on the premises" or within the terms describing the other uses forbidden in the business district. Under the rule of construction which must be applied when legislation is in derogation of private rights, the language of the regulation, ambiguous as it is, cannot be extended to prohibit a use not clearly defined or fairly implied.

The view which we take of this case makes it unnecessary to consider whether the appeal from the zoning commission to the zoning board of appeals was timely and proper.

There is error, the judgment is set aside and the case is remanded with direction to sustain the appeal and to direct the zoning board of appeals to affirm the issuance of the permit by the zoning commission.

In this opinion the other judges concurred.