RAYMOND JOHNSON

v.

LIBERTY MUTUAL INSURANCE COMPANY
AND ANNA WEXLER

January 31, 1973

*Shaw & Eldredge* (*Mr. Carleton Eldredge* orally) for the plaintiff.

*Wadleigh, Starr, Peters, Dunn & Kohls* (*Mr. Theodore Wadleigh* orally) for the defendant Liberty Mutual Insurance Company.

KENISON, C.J. The question for decision in this case arising from a petition for declaratory judgment is whether the defendant Liberty Mutual Insurance Company is obligated to furnish insurance coverage relative to an alleged accident to Anna Wexler on or about September 15, 1963, at a building owned by the plaintiff and known as the Casino in Bethlehem, New Hampshire. The trial court held that Liberty Mutual was not obligated to provide coverage under its comprehensive general liability policy nor estopped from denying coverage due to any representations to the plaintiff concerning coverage. The court further ruled that Liberty Mutual had adequately performed its undertaking to procure insurance on the Casino for the plaintiff. The plaintiff's

exceptions to the findings and rulings were reserved and transferred by *Keller,* J.

On June 12, 1963, Raymond Johnson purchased certain property in Bethlehem including a motel and a recreation building known as the Casino. The next day he telephoned Mrs. Marcouillier, technical sales assistant of Liberty Mutual in Manchester, informing her of his acquisition and requesting insurance coverage. Several days later, Mr. John Adams, resident manager of Liberty Mutual's Manchester office, went to Bethlehem to talk with Mr. Johnson and inspect the property. Thereafter, during the remainder of June and into July, Mr. Adams and Mrs. Marcouillier communicated on various occasions by letter and telephone with Mr. Johnson concerning who was to write the insurance, the types and amounts of insurance needed, the premiums, the name of the insured, and related matters.

During these communications Mr. Johnson was informed that Liberty Mutual would carry the motel insurance but that the coverage on the Casino, a substandard risk, would have to be placed with another company. In late June and early July Mrs. Marcouillier accordingly arranged with Mr. Taggart of the Merrimack Valley General Agency to have the Casino insurance placed with Sutton Mutual Fire Insurance Company. Mr. Taggart bound the Casino with Sutton Mutual effective August 20, 1963, with liability limits of $10,000 per person and $20,000 per accident and subsequently issued a policy in the name of Ray-Jon, Inc. on October 10, 1963. Mr. Johnson received this policy sometime during the middle of October and at about the same time he received a writ from Anna Wexler suing Ray-Jon, Inc. and Raymond Johnson for injuries allegedly sustained on the Casino property on September 15, 1963. Mr. Johnson had formed Ray-Jon, Inc., in late June, and the incorporators voted on June 28 to issue Ray-Jon's stock to Johnson in consideration of his transferring the Casino and other properties to the corporation. This transfer was never made. Despite Johnson's testimony to the contrary, the trial court found that Johnson had intended to transfer the Casino to Ray-Jon, Inc. and had instructed Adams to have the policies issued in that name, which information Adams had passed along

to Taggart.

Plaintiff contends that Liberty Mutual should be estopped from denying coverage because it misled the plaintiff into believing that it was insuring the Casino pending placement of the insurance with another carrier and, additionally, because it negligently failed in its undertaking to procure such insurance coverage from another company. "The question of whether the company is estopped to assert [its] defenses depends upon whether some act, conduct or nonaction of the company has been reasonably relied on by the insured to his prejudice." *Bowen v. Casualty Co.*, 99 N.H. 107, 113, 107 A.2d 379, 384 (1954); *accord, Fitch Company v. Insurance Company*, 99 N.H. 1, 104 A.2d 511 (1954). We believe there is adequate evidence to support the court's conclusion that Liberty agreed only to procure insurance on the Casino from another carrier and that it did not agree or lead Johnson reasonably to believe that Liberty was binding the Casino in the meantime.

This case does not present the situation of an insurance agent assuring the plaintiff that the company would "cover" the plaintiff and then refusing to honor that commitment. *Barrette v. Company*, 79 N.H. 59, 104 A. 126 (1918). There, an estoppel was appropriate since the insurer had clearly led the insured to believe that he had insurance coverage. Here, on the other hand, the only representation which conceivably could have misled Johnson into believing that Liberty was binding the Casino pending outside placement was a closing statement in a letter from Mrs. Marcouillier to Johnson. The entire letter read as follows: "Enclosed please find renewal insurance Binders as further evidence of coverage until the formal policies are produced. As soon as I receive the policies, I will forward them to you. In the meantime, please be assured that we are providing adequate coverage. Thank you." This cover letter was accompanied by renewal binders for the comprehensive general liability policy covering certain of Johnson's other business enterprises. It is clear to us that this letter referred specifically and exclusively to the continuing coverage by Liberty of the properties which had been expressly included under the comprehensive policy. Consequently, we do not think that Johnson could reasonably

have assumed that this sentence was an affirmation by Liberty that it was insuring the Casino prior to placing it with another company, particularly since there had never been any mention that the Casino or motel could be included under the comprehensive policy.

Nevertheless, the plaintiff maintains that Liberty should be estopped from denying coverage under the comprehensive policy because he had on previous occasions obtained immediate binders from Liberty over the telephone for additional business properties which he had purchased. However, there is no evidence that Johnson specifically requested that Liberty bind the Casino or motel immediately and under the preexisting comprehensive policy. The comprehensive policy was in the name of "Raymond Johnson dba Groveton Oil Co." and covered for the most part only those properties used in the plaintiff's oil business. Only twice had Liberty bound under this policy properties not related to the oil business, and those were minor rental properties for which a premium of only $27.97 was charged, as compared with a premium of $425 charged by Sutton for the Casino alone. Also, Johnson testified that he realized that Liberty was placing the Casino coverage with another company. "The law in this state is that 'the doctrines of waiver and estoppel cannot be used to bring within the coverage of the policy risks not included within its terms.' *Cushman v. Grafton,* 97 N.H. 32, 35." *Farm Bureau Ins. Co. v. Geer,* 107 N.H. 452, 455, 224 A.2d 580, 583 (1966).

Plaintiff maintains that Liberty procured limits lower than it had been instructed to obtain and procured the policy in the name of the wrong insured. It is well established that if the failure to procure insurance "is an unjustifiable breach of the contract (*Dufton v. Bank,* 95 N.H. 299; *Ela v. French,* 11 N.H. 356) or a negligent performance thereof, the defendant is liable for any damage resulting therefrom." *Mansfield v. Finance Corp.,* 99 N.H. 352, 354, 111 A.2d 322, 323 (1955), and cases cited therein. *See generally* 3 Couch, Insurance § 25:46 *et seq.* (2d ed. 1960); 18 Couch, Insurance § 74:54 *et seq.* (2d ed. 1968); Annot., 29 A.L.R.2d 171 (1953). We believe the evidence was sufficient for the court to find that Liberty was reasonable in its belief that Ray-Jon, Inc. was

to be the named insured and that the lower limits of $10,000/$20,000 had been agreed to by Johnson. The only mention of the limits on the Casino insurance in any of the correspondence was in a letter from Adams to Johnson on July 9, 1963: "The liability premium for the casino itself for $10,000/$20,000 bodily injury limits and no property damage will be $425.00 a year, placed on the open market."

In conclusion, the evidence indicates that Liberty promptly and diligently took such steps as were reasonable under the circumstances to procure the liability coverage on the Casino in accordance with the instructions of the plaintiff. Once Liberty had placed the Casino coverage with Mr. Taggart and Sutton Mutual in early July, its undertaking to the plaintiff to procure insurance was adequately performed and its duty discharged. Absent a showing of negligence or breach of contract to procure insurance, the plaintiff cannot prevail. *Rayden Eng'r Corp. v. Church,* 337 Mass. 652, 151 N.E.2d 57 (1958). While the evidence adduced at trial conflicted on several material issues, we think there was adequate evidence to support the trial court's findings and rulings. *Tyler Advertising Co. v. Lamprey,* 107 N.H. 138, 144, 218 A.2d 71, 75 (1966).

*Exceptions overruled.*

All concurred.