[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 FACTS
The plaintiff, LJ Pools, Inc., brings this appeal following a denial of a revised site plan application by the defendant, Planning Zoning Commission of the Town of Bethel.
The property, which is the subject of the site plan proposal, is located at 155 Grassy Plain Street in an industrial (I) zone.
Prior to the submission of the plaintiff's revised site plan, Bethel's zoning enforcement officer, Joseph Portenza, conducted an investigation concerning allegations of zoning violations at 155 Grassy Plain Street.
Mr. Portenza agreed to defer action on a cease and desist order, pending the submission to the Bethel Planning Zoning Commission of the revised site plan application.
LJ Pools, Inc. uses 155 Grassy Plain Street for the construction of swimming pools, and the storage of vehicles used in a fuel oil business.
A "batch plant" used in the manufacturer of concrete is located on the property, near the boundary with property owned by the Ambel Precision Manufacturing Corp.
In addition to using the concrete as part of its pool business, LJ Pools advertises the sale of concrete for residential and commercial purposes, unrelated to the pool enterprise (ROR 12.8, 12.9, 12.10, and 12.11).
The operation of the batch plant has produced a series of complaints CT Page 10810 from the abutting property owner, alleging damage to parked cars and inconvenience (ROR 5.6, 9.2 and 9.3).
The revised site plan, submitted on July 7, 1999 (ROR 1.3), sought revision of a site plan approved in February, 1988 (ROR 1.2).
A public hearing was conducted on July 13, 1999 (ROR 2.3 and 2.8), and on July 27, 1999, the commission voted unanimously to deny the revised site plan application (ROR 3.3-3.30, 3.11, pp. 25-26).
The commission offered four reasons for its decision:
1. The material storage area is in the 25 foot required front yard setback, in violation of § 118-38J(2) of the zoning regulations.
2. The sale of concrete as a primary, not accessory use, is in violation of § 118-38A(12) of the regulations.
3. The 33 foot batch plant structure adjacent to the property line is a violation of the bulk plan requirement set forth in § 118-38D of the zoning regulations.
4. Discharge of air contaminants from the batch concrete plan is in violation of § 118-38F(1).
Notice of the decision was published on August 6, 2000 (ROR 13.3), and the plaintiff thereafter commenced this appeal.
 AGGRIEVEMENT
The plaintiff, LJ Pools, is the owner of 155 Grassy Plain Street, Bethel (Exhibit 1).
A party claiming aggrievement must satisfy a well established two-fold test: (1) the party must show that it has a specific personal and legal interest in the subject matter of the decision, as distinct from a general interest such as concern of all members of the community as a whole; and (2) the party must demonstrate that its specific personal interest has been specifically and injuriously affected by the action of the commission. Primerica v. Planning Zoning Commission, 211 Conn. 85,93 (1989); Hall v. Planning Commission, 181 Conn. 442, 444 (1980).
Aggrievement is a jurisdictional issue and a prerequisite for maintaining an appeal. Winchester Woods Associates v. Planning ZoningCommission, 219 Conn. 303, 307 (1991). CT Page 10811
Ownership of the property, which is the subject of the proposed revised site plan, demonstrates a specific personal and legal interest in the subject matter of the decision. Huck v. Inland Wetlands WatercoursesAgency, 203 Conn. 525, 530 (1987).
The denial of the revised site plan by the defendant, Bethel Planning 
Zoning Commission, has specifically and injuriously affected the interest of LJ Pools, Inc.
The defendant is therefore aggrieved from the decision appealed from.
 STANDARD OF REVIEW
When considering a site plan application, a planning and zoning commission acts in an administrative capacity, rather than in a legislative or quasi-judicial capacity. Goldberg v. Zoning Commission ofthe Town of Simsbury, 173 Conn. 23, 29 (1977); Allied Plywood, Inc. v.Planning Zoning Commission, 2 Conn. App. 506, 512 (1984).
A commission has no independent discretion beyond determining whether the plan, as presented, complies with the applicable regulations.Kosinski v. Lawlor, 177 Conn. 420, 426-27 (1979).
The commission's powers are specifically limited pursuant to §8-3(g)[1] of the Connecticut General Statutes, and if a plan, as submitted, conforms to the applicable regulations, the commission has no discretion or choice but to approve it. R.K. Development Corporation v.Norwalk, 156 Conn. 369, 375-76 (1968).
In reviewing a decision of a municipal land use agency, a court must not substitute its judgment for that of the agency, and must not disturb the decision of the agency, so long as an honest judgment has been exercised, after a full and fair hearing. Molic v. Zoning Board ofAppeals, 18 Conn. App. 159, 164-65 (1989).
In discharging its responsibility, a commission is endowed with liberal discretion, and its action is subject to review by a court only to determine whether it was unreasonable, arbitrary, or illegal. ConnecticutSand Stone Corporation v. Zoning Board of Appeals, 150 Conn. 439, 442
(1963).
A municipal land use agency has a right to interpret its regulations to determine whether or not a regulation applies in a given situation.Lawrence v. Zoning Board of Appeals, 158 Conn. 509, 513 (1969).
A trial court is charged with determining whether a commission has CT Page 10812 correctly interpreted its regulations and applied them with reasonable discretion to the facts. Pascale v. Board of Zoning Appeals, 150 Conn. 113,117 (1962); Baron v. Planning Zoning Commission, 22 Conn. App. 255, 257
(1990).
While the interpretation of provisions contained in a municipal regulation is a question of law for the court, the position of a municipal land use agency is entitled to some deference. NortheastParking, Inc. v. Planning Zoning Commission, 47 Conn. App. 284, 293
(1997); Coppola v. Zoning Board of Appeals, 23 Conn. App. 636, 640
(1990).
The burden is on the plaintiff to show that the commission acted unreasonably arbitrarily, or illegally. Baron v. Planning ZoningCommission, supra, 257.
General provisions cannot serve as the basis for denying a site plan application. TLC Development, Inc. v. Planning Zoning Commission of theTown of Branford, 215 Conn. 527, 532 (1990). The discretion exercised by an administrative agency must be controlled by fixed standards applying to all cases of a like nature. Sonn v. Planning Zoning Commission ofthe City of Bristol, 172 Conn. 156, 163 (1976).
Section 8-3(g) of the General Statutes requires a commission which denies a site plan application to "set forth the reasons for such denial . . ."
It is not necessary for all, or even a majority of the reasons given by the commission to be valid, in order for a court to uphold the agency's determination.
If any of the reasons stated would support the action of the commission, the plaintiff's appeal must fail. Blakeman v. PlanningCommission, 152 Conn. 303, 306 (1965); Crescent Development Corporationv. Planning Commission, 148 Conn. 145, 150 (1961).
 RECORD FAILS TO SUPPORT THREE OF THE REASONS FOR THE DENIAL OF THE REVISED SITE PLAN
The commission seeks to justify its denial of the revised site plan, claiming that § 118-38J(2) of its regulations is violated, due to the storage of materials on a portion of the property.
Section 118-38J(2) provides:
 Required front yards shall be landscaped in their entirety except for permitted driveways and except CT Page 10813 where otherwise permitted by the Commission.
The section is silent concerning the storage of materials or the placing of merchandise on the grounds required to be landscaped.
In the absence of a regulation prohibiting material storage or display in an area required to be landscaped or buffered, the quoted regulation is insufficient to sustain the denial of the revised site plan.
The commission was confronted with substantial evidence concerning the effect of air contaminants from the batch concrete plant.
The commission contends that the evidence supports a finding that the plant is being operated in violation of § 118-38F(1) of the zoning regulations.
That section reads:
 Smoke or other air contaminant shall not be discharged into the atmosphere for a period or periods aggregating more than three (3) minutes in any one (1) hour, which is as dark or darker in shade than as designated as No. 2 on the Ringlemann Chart, as published by the United States Bureau of Mines, or which is of such capacity as to obscure an observer's view to a degree equal to or greater than does smoke designated as No. 2 on the Ringlemann Chart.
Although the record is replete with materials documenting damage to vehicles on abutting property, dust, and the presence of airborne contaminants, the record contains no empirical data from which a violation of § 118-39F(1) of the regulations could be found.
It may well be that facts which could give rise to a cause of action against the plaintiff, if proven, produced atmospheric changes which rendered the area darker than the No. 2 on the Ringlemann Chart referenced in the regulation.
However, without such proof in the record, § 118-38F(1) cannot serve as a basis for sustaining the denial of the site plan application.
The batch plant, located a mere 10 feet from the property line with Ambel Precision Manufacturing Corporation, is clearly the source of annoyance and complaints about airborne particles.
The commission claims that the batch plant is a "building" and is CT Page 10814 therefore subject to the provisions of § 118-38D of the zoning regulations.
That section deals with the maximum height of buildings.
Section 118-2 defines "Building" to mean:
 A structure having a roof and walls and used or intended for the shelter, support, housing or enclosure of persons, animals or materials.
That same section defines "Structure" as:
 Anything constructed or erected with a fixed location on the ground or attached to something having a fixed location on the ground. . . .
The record demonstrates that the batch plant is moveable and is not bolted to the ground (ROR 13.11, pp. 14, 26).
Furthermore, the president of the plaintiff corporation, James Fiorilla, expressed a desire to move the plant into a garage.
The batch plant is not an enclosure for "persons, animals or materials," and is not required to be in a "fixed" location.
Therefore, it would not constitute a "building" under the zoning regulations, and § 118-38D does not apply.
Because the batch plant is not a "building," it is unnecessary to consider the plaintiff's claim that § 8-13a(a)[2] of the Connecticut General Statutes is applicable to the facts of this case.
 RECORD SUPPORTS FINDING THAT SALE OF CONCRETE WAS A PRIMARY, NOT AN ACCESSORY USE
Section 118-2 of the Bethel Zoning Regulations defines an "accessory use" as: "[a] use subordinate and customarily incidental to a principal use on the same lot as such principal use.
The plaintiff cannot creditably claim that the sale of concrete is an "accessory use," when faced with an avalanche of advertisements for the sale of concrete for residential and commercial activity, with no reference to swimming pools (ROR 12.9, 12.11).
Faced with evidence sufficient to justify a finding by the commission CT Page 10815 that the sale of concrete was not an "accessory use," the plaintiff argues that § 118-38A(12) does not apply to the manufacturing or processing of concrete.
The argument is unpersuasive and disingenuous in light of prior site plan approvals concerning 155 Grassy Plain Street, and the interpretation of § 118-38A(12) agreed upon at the time.
The regulation prohibits the manufacturing, processing, and/or fabrication of "portland and similar cements . . . asphalt or bituminous concrete, stone or gravel. . . ."
The commission had previously interpreted the regulation as applying to the manufacture of concrete in its minutes of June 11, 1996 (ROR 12.5):
 As the concrete is made as an accessary use to the sale of pools, there is no violation of the zoning ordinance.
This regulation was, therefore, interpreted by both the commission and the applicant as encompassing the same of "concrete," a word usually used as a synonym for cement.
As the commission correctly points out, concrete is the processing of cement, stone and/or gravel, activities which are prohibited by the regulation, except as accessory uses.
Municipal zoning regulations must be interpreted so as to reconcile their provisions and make them operative as far as possible. Planning Zoning Commission v. Gilbert, 208 Conn. 696, 706 (1988); Donohue v.Zoning Board of Appeals, 155 Conn. 550, 557 (1967).
Words employed in zoning regulations are construed according to the commonly approved usage of the language. Fisher v. Board of Zoning Appeals,143 Conn. 358, 361 (1956).
When more than one construction is possible, the one which renders the regulation effective and workable must be preferred over one which might lead to unreasonable or bizarre results. Maciejewski v. West Hartford,194 Conn. 139, 151-52 (1984); Verrastro v. Sivertsen, 188 Conn. 213,220-21 (1982).
The commission, consistent with a reasonable interpretation of § 118-38A(12) of its regulations, and its own past construction of that same regulation, was fully justified in finding that the processing or manufacturing of concrete was not allowed, except as an accessory use. CT Page 10816
Therefore, it was justified in denying the plaintiff's revised site plan application, based upon a failure to comply with § 118-38A(12) of the zoning regulations.
The appeal of the plaintiff, LJ Pools, Inc., is therefore dismissed.
Radcliffe, J.