HARTFORD ACCIDENT AND INDEMNITY CO.

*v.*

WALTER S. LOUGEE *& a.*

*Hughes & Burns* and *Charles F. Hartnett* (*Mr. Burns* orally), for the plaintiff.

*Cooper & Hall, Errol S. Hall, Leonard C. Hardwick* and *Guy Smart* (*Mr. Gardner S. Hall* orally), for the defendants.

ALLEN, C. J. I. The plaintiff requested rulings relating to the burden of proof and to the effect that it rested generally on the defendants, under the authority of *Travelers Ins. Co.* v. *Greenough*, 88 N. H. 391. No rulings in respect thereto were made unless by somewhat doubtful implication, but the plaintiff was entitled to none in its favor. It voluntarily assumed the ordinary position of a plaintiff in opening the case and accepted the order for its closing. It thereby assumed the burden of proving it had not insured the defendant instead of requiring that action be taken in assertion of the claim of insurance. *Travelers Ins. Co.* v. *Greenough, supra*, 393. It sought to make out a case of non-liability rather than to defend against a claim that it was liable. The trial was conducted with this apparent understanding by the court and all parties. It would be unfairly inconsistent for the plaintiff to take the advantages of the order of proceeding in the trial without submitting to the normally attendant burdens.

In *Travelers Ins. Co.* v. *Greenough, supra*, the only question raised was the result of a finding of equally balanced conflicting evidence on a decisive issue. The procedural course of the trial was not presented as a matter affecting the burden of proof, and the proper rule of the burden was therefore considered without regard to the order of introducing evidence. Here the question is whether the benefit of the rule was waived or lost by a course of the trial not only accepted without objection but apparently assumed as a matter of right.

II. The court found that one Canney had the "real or apparent" authority of a general agent for the plaintiff to insure. He undertook to insure the defendant for a longer period than was allowed without issuing a policy. Whether any insurance agent, general or special, may thus act without more definite and explicit authority to do so than is shown by his appointment as such an agent, seems extremely doubtful. No express terms of authority to do

business in such a manner were given by the plaintiff to the agency with which Canney was connected or to him. But as it is thought to be helpful in passing upon the issue of apparent authority, the character of Canney's position as an agent has received attention.

The claim advanced in support of his position as a general agent is based upon the statutes relating to licenses to insurance agents and upon the plaintiff's application for him to be licensed. By Laws 1913, c. 78, s. 1, the Insurance Commissioner under specified conditions was required, upon written notice by a foreign insurance company of its appointment of an agent, to license him as its agent for doing in the State such business as it might do therein. By Laws 1917, c. 43, the commissioner was given discretionary authority to issue licenses in which the agent's authority might be "limited to the extent agreed upon with the company making application and set forth in the license."

A license issued to Canney in 1921 set forth that he might transact the plaintiff's business of casualty insurance within the State "so far as he may be authorized to do" by it as its agent. The license was annually renewed in this form so that one was in force at the time of his transactions with the defendant. The plaintiff's application for his original license stated his appointment as an agent for the transaction of its business and requested the license to be issued to him as such agent.

The contention is made that the application set forth no limits of authority and therefore showed Canney to be a general agent, and that the license was equally unlimited in its grant of the right to exercise his authority. The contention is thought to be unsound and to overreach. Its adoption would mean that from 1913 to 1917 only general agents could be licensed, and that any agent might do business throughout the State, since that is what the insurer might do. No such strict meaning of the statute, with such an impractical result contrary to the well known and customary methods of establishing insurance agencies, is to be found. No policy for the State to require such a comprehensive field of activity for every agent has been suggested. The legislature is assumed to have contemplated the adoption of general business practices in the conduct of the insurance business, and the purpose that suitable persons to deal with a foreign insurer's prospective and gained customers is predominant.

No unlicensed persons might act as agents. Laws 1899, c. 86, s. 1, as amended by Laws 1911, c. 180, s. 1, now P. L., c. 275, ss. 18,

19. Other legislation (now in force as P. L., c. 275, ss. 15, 16) was enacted prior to the 1913 statute with the same purpose of securing reliable agents. The 1913 statute was designed to more securely effectuate the purpose, in its demands for a finding of suitability before a license should issue, in addition to the informative requirement for the license to show the appointing insurer's right to do business as well as the agent's authority to represent it. The 1913 statute also contained a provision that the insurer should be bound by the agent's acts within the apparent scope of his authority, thus strongly indicating that actual authority in a given case might be less than that of a general agent.

Read literally, the 1913 statute provided that the license should be to do as an agent what the principal might, and it is most probable that the 1917 statute was passed to clarify that of 1913 as between a strict meaning and one more consonant with reasonableness. In any event, an application made after 1917 for a license to an agent is not to be construed as showing that the appointee is a general agent, although it is silent in stating any exact definement of his authority. The law makes no order that the application shall state the limitations of authority. Nor does it require the commissioner to state them specifically in the license he issues. A license for one to act as agent so far as the principal authorizes him to act states the extent of authority, although indefinite in exact and complete specification, and is a compliance with the statute. The license sets forth the limits as being those agreed upon between the insurer and the agent, and so far as the license gives notice to others, it shows that the agent has no more authority than has in fact been bestowed upon him by his principal. No one can be misled and entitled to treat the agent as having general authority, since he is thereby put upon inquiry to ascertain what the agent's real and exact authority may be. The terms and limits of authority are not expected to be rigid during the period of a license, but may be enlarged or narrowed. The legislature did not require that on every change the license would be altered or a new one issued. The public protection was thought to be adequately secured if notice of possible limits was given without having the license show what they were. Residence and suitability were the sufficient requisites, with the enacted provision for holding the insurer responsible for conduct within the apparent scope of the agent's authority meeting ignorance of his actual authority.

Accordingly, the proposition that upon the evidence Canney is

to be held to have had actual authority to insure the defendant with the plaintiff otherwise than as a soliciting agent is regarded as specious and devoid of merit. To uphold it would be to defy the understanding of the insurer, the agent, and the Insurance Commissioner who represented the State and prescribed the form of his license. And it would be of no practical service as a guard against fraud.

III. The question whether Canney acted within the apparent scope of his authority is more difficult. He deceived the defendant, and the issue is whether the deception is chargeable to the plaintiff as a matter of estoppel. Unless it held Canney out as having authority to act as he did, "it was not required to protect itself by giving notice of the limits of authority." *Gibbs* v. *Casualty Co.*, 87 N. H. 19, 23. Its statements or conduct or practices must have been such as to induce reasonable reliance by the defendant upon Canney's fraudulent representations and procedure. He made no accounting or report of the premium the defendant paid him. Thus the fraud, not inuring to the benefit of the plaintiff and its fruits not being accepted by the plaintiff, was his independent affair if he was not clothed with some robing of authority as its agent in his commission of the fraud. No principle of justice demands that the consequences of the fraud be thrown upon the plaintiff merely because he was its agent. The plaintiff is not answerable for what he did in excess of his rightful authority merely because of his pretence of authority not in fact bestowed upon him.

Canney was only a soliciting agent for the plaintiff, with no right to issue its policies, or to make it an insurer beyond a temporary period of not over ten days during which a general agent passed upon applications. Authority to seek business and to thus insure was no fair indication of authority as a general agent, and more must appear for the plaintiff to be charged with holding him out as such an agent. The holding out, to purport authority, must be a representation by statement, conduct or practice, and an agent has no more than actual authority except by such representation. One dealing with an agent is put upon inquiry to ascertain the agent's authority. He must not only be misled by what the principal has done or omitted to do, in making out a case of apparent authority, but it must be found that a reasonable man in his place would likewise be thereby misled. Otherwise he may hold it only to the agent's actual authority. This is no more than a restatement differently phrased of the rule quoted and approved in *Atto* v. *Saunders*, 77 N. H. 527, 529, and since consistently followed.

The defendant argues that such holding out may be found from various circumstances and incidents in Canney's connection with the plaintiff.

He was in the service of an agency which represented three casualty companies. One had given the agency the right to issue policies, while for the plaintiff and the third company it might do business only as it has been stated Canney might act for the plaintiff. The court ruled that the plaintiff, knowing the agency's representation of other companies, was to be charged as though the agency's authority for it was the same as for them, in the absence of notice to the public of any difference. If an insurer gives an agent apparent authority to insure to the extent and in the manner another insurer has given the agent actual authority to insure, in the absence of some notice to the contrary, the result is to subject an insurer to responsibility to the extent assumed by a single insurer engaged in the same or similar business. While a principal is bound if the agent does what "agents in that line of business are accustomed to do," (*Davison* v. *Parks*, 79 N. H. 262, 263), the customary practice of one agent or insurer is not enough to show a general practice among agents. It does not appear here that the plaintiff knew the agency had general authority to act for any company, and even if knowledge were had, its appointment of the agency with special and limited authority would not, without more, entitle third persons reasonably to believe that the authority was general. It is well and commonly known that an insurance agent's relations with the different companies he represents, vary. The classes of property or persons which or with whom an agent may insure may not be the same in one company as another, and a ban against a particular risk is not ineffectual merely because the ban is not imposed by all of the agent's companies. While a general agent may have authority in appearance to act in a way which is contrary to private and undisclosed orders of limitation (*Schwartz* v. *Casualty Co.*, 82 N. H. 177, 178), a special agent does not have the apparent authority of a general agent merely by reason of the fact that he is also a general agent for another principal in the same kind of business.

It appears that policies approved by the general agent were sent to the special agency, which signed them before delivery to the policy-holder, there being no notice of their preparation and required approval by the general agent. But this circumstance is not of importance here, since no policy of the plaintiff insuring the defendant was ever prepared.

Even if it might be found that the agency for which Canney worked and Canney himself were held out by the plaintiff as its general agents, it does not follow that it was within the apparent scope of Canney's authority to insure the defendant in the manner testified to by him. The testimony was that when the defendant was insured, he relied upon Canney's statement that the insurance would run regardless of the delivery of a policy. No policy was issued, and upon his inquiry why he did not have one, Canney told him that it had "gone to the company for a binder." Canney, however, gave him a service card, saying that on presenting it in case of an accident it would "take care of everything." The card was one of a form issued by the plaintiff to its policy-holders. It stated a number of a policy actually issued to another person and also stated its issuance by the agency with which Canney was connected. Where Canney obtained the card does not appear, although he may have taken it from some samples sent his employer on the latter's first engagement as the plaintiff's agent some thirteen years previously. The plaintiff's practice was for its general agent on approval of an application to send the card with the policy to the special agent for delivery of both together to the policy-holder. Evidence was introduced that the company for which the agency was a general agent at least in one instance delivered a similar card to the policy-holder when the insurance was bound and before his policy was issued. If it showed a practice, it was not shown to be a general one of other companies, and hence it may not be found that the plaintiff's agents had apparent authority to employ such a method of business with its customers. No claim is made that the plaintiff had any notice of Canney's dealings with the defendant relating to insurance with it until more than four months after them, when the accident for which the defendants claim the plaintiff insured liability occurred.

The court found that the defendant reasonably relied upon Canney's representation that the plaintiff required the policy for some purpose and that until its return the service card provided evidence of insurance. And it was ruled that it could not be found that the defendant acted unreasonably in giving no further thought to the policy after doing his business with Canney. This ruling was probably unintentionally made instead of an intended finding that the defendant's subsequent inattention to the matter was reasonable, and the ruling is so construed.

It is not perceived how the findings can be sustained. Distinction

is to be made, in applying the law to the facts, between the defendant's right to rely on anything Canney told him as against Canney and his right to rely thereon as against the plaintiff only to the extent it was reasonable to do so in the light of its statements and conduct. The defendant is to be charged with the possession of ordinary intelligence. For five out of six previous successive years he had taken out liability insurance and received his policies within two or three days after applying for the insurance. He knew, as any man would know, that he was entitled to a policy from the plaintiff if the premium he paid was not returned. When told that it was sent in for a binder, he must have understood, as any man would, that it was to have it accepted and that Canney could not issue it unless such acceptance were obtained. While neither court nor counsel made any exploratory examination into the defendant's exact understanding of a binder, any reasonable man in his place would have understood that something was wrong if the policy were not soon forthcoming. Men in general taking out insurance expect a policy to show it, and when the defendant's was not received within a reasonable time for obtaining the plaintiff's acceptance, he was put on his inquiry. And four months is clearly too long for reasonable waiting. It is inconceivable that one might reasonably expect the insurer to keep the policy indefinitely, with no reason given unless to pass upon it, even if he had evidence to show payment for it and had such a card as was given the defendant. Knowing Canney could not issue the policy with finality, the defendant knew his authority was limited, and the plaintiff is not accountable for Canney's fraud in telling him the card took the place of the policy. The known lack of Canney's authority to issue the policy was proof to an ordinary man that he could not insure as though the policy were issued, and scrutiny of the record discloses no evidence to indicate that he had any more apparent authority than real authority to insure beyond the ten day period without the issuance of a policy. Ordinary intelligence denoting common sense, any use of common sense would have developed inquiry into the truth of Canney's falsehoods if it would not have excited disbelief when they were made.

The card used by Canney, even if he obtained it rightfully, did not reasonably show that he might insure when it had been made clear that he had no right to issue a policy. If he could not issue a policy, it is equally clear that he could not issue the card as an equivalent for it. Neither the possession of the card nor the manner of its use was sufficient to reasonably indicate an apparent right of

the agent to insure for an extended period without delivering a policy. It was not within the insurer's due anticipation that Canney would thereby be enabled to mislead and deceive. "The transaction was 'extraordinary and unusual'." *New Hampshire &c. Co.* v. *Paine,* 80 N. H. 540, 543.

The result is that the defendant was uninsured by the plaintiff beyond the ten day period, and it is not estopped from denial of insurance thereafter.

*Judgment for the plaintiff.*

All concurred.