Herbert ALLISON, Respondent,

v.

NATIONAL INSURANCE UNDER-
WRITERS, Appellant.

No. 25788.

Missouri Court of Appeals,
Kansas City District.

Oct. 2, 1972.

Motion for Rehearing and Transfer to Su-
preme Court Denied Oct. 26, 1972.

Application to Transfer Denied
Dec. 11, 1972.

Brown, Douglas & Brown, Wendell E. Koerner, Jr., St. Joseph, for appellant.

Esely & Kilpatrick, William J. Esely, Bethany, Larry L. Zahnd, Maryville, for respondent.

SWOFFORD, Judge.

This is an appeal from a judgment in an equity action brought under Section 379.200 V.A.M.S., wherein the court below, sitting without a jury, held that the plaintiff-respondent was entitled to full satisfaction of a final judgment he had previously obtained against one Joe Rankin, to be paid from the proceeds of an insurance policy wherein Rankin was the insured and the appellant the insurer.

The original action involved damages to an airplane owned by the plaintiff, sustained in a windstorm while the airplane was at the Municipal Airport at Maryville, Nodaway County, Missouri.

Joe Rankin, the insured-judgment debtor, was engaged in business under the trade name of "Aviation Services, Maryville, Missouri". Rankin had entered into a written contract with the City of Maryville, which document is designated as a "Lease" (Plaintiff's Exhibit No. 3), under the terms of which he leased for his own exclusive use portions of the airport and buildings known as Tracts No. 1 and No. 2, and also Tract No. 3 for the joint use of "Aviation Services" and the City of Maryville. In this latter Tract No. 3 was located the public facilities, such as, waiting room, lunch or snack counter and restrooms, for the use of the public. The lease further provided that Rankin agreed to operate all other facilities of the airport (except a National Guard Hangar and park and farm land) for the use and benefit of the public. He was required under the contract to furnish the public specified services, at rates approved by the city, including maintenance of public facilities (part of Tract No. 3), parts, repairs, storage, ground transportation, flight instruction, rentals, charters, airplane sales and related merchandise. Rankin paid $1.00 annual rental under this contract.

Pertinent here are the following specific sections of this contract:

"(18) The Lessor designates the Lessee as manager of the Airport * * *. Said manager * * * shall be *in complete charge* of said Airport and devote such time as is necessary to the management thereof, *shall oversee, direct and control aircraft services and aircraft operation.*" (Emphasis supplied.)

It also provided:

"(14) The Lessee shall carry an adequate amount of public liability insurance * * on its airport operation in a reliable insurance company, which said policy shall be taken out by it in the joint names of Lessee and Lessor * * *."

In accordance with his obligation under (14) above, Rankin applied for and was issued Policy No. 6987 in the National Insurance Group, such policy being issued by appellant-National Insurance Underwriters, and designated as "Combination Aircraft Policy". This is the policy of insurance here involved and there is no dispute that it was in full force and effect on June 27, 1965, the date that Allison's aircraft was damaged.

This policy and its endorsements require our close and critical scrutiny in the determination of the issues before us, as the same affect the right of plaintiff to recover his judgment for property damage from the defendant under Section 379.200 V.A.M.S.

This policy (Plaintiff's Exhibit No. 1) insured Joe Rankin d/b/a Aviation Services to the limit of $100,000 for property damage. It consists of the main printed policy and five endorsements, all issued on the same date. The policy and Endorsement No. 1 cover a specific aircraft owned by the insured, a 1946 Cessna, fully described therein, and provides for automatic coverage for additional aircraft acquired by insured. The endorsement shows an initial premium deposit of $245.00 and a monthly premium charge of $47.24. Endorsement No. 2 covers Charter Flying for Hire and Endorsement No. 3 sets forth the qualifications for Approved Pilots.

Endorsement No. 4 (which is the coverage now in question) provides as follows:

## "AIRPORT LIABILITY ENDORSEMENT NO. 4
### (INCLUDES PRODUCTS LIABILITY)
### DECLARATIONS

Item

1. Named Insured _____ JOE RANKIN d/b/a AVIATION SERVICES

2. (a) Location of Premises ___ Maryville Municipal Airport, Maryville, Mo. ___
     (Airport Name) (City or Town Where Located)

   (b) Description of Premises Occupied by Named Insured _____ Entire _____

   (c) Interest of named Insured in Premises _____ Lessee _____

3. Business of named Insured is ___ Airport Operation—Sales & Services ___

4. The insurance afforded is only with respect to such and so many of the following coverages and divisions hereinunder as are indicated by specific premium charge or charges. The limit of the company's liability against each such coverage and division shall be as stated herein, subject to all the terms of this policy having reference thereto.

| COVERAGES | LIMITS OF LIABILITY | DIVISIONS | PREMIUM DEPOSIT |
|---|---|---|---|
| * * * | | | |
| K. Property Damage Liability | $100,000. Each Accident | 1. Premises<br>2. Off Premises | $ Included<br>$ Included |
| | | (Includes Products Liability) | |

_____ Annual

X  Monthly    Premium    $12.25

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### INSURING AGREEMENTS

The Company agrees, in reliance upon the statements contained in the Declarations and Application and subject to the limits of liability, exclusions, conditions and other items of this policy:

\*   \*   \*   \*   \*   \*   \*   \*

Coverage K.—Property Damage Liability

To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of the hazards hereinafter defined.

\* \* \* \* \* \* \* \* \* \* \* \*

### DEFINITION OF HAZARDS

Division 1. Premises-Accident(s) happening on the named insured's premises described in Item 2(b) of the above Declarations resulting or arising from the ownership, maintenance or use of the above described premises of the named insured's business operations thereon.

\* \* \* \* \* \* \* \* \* \* \* \*

### EXCLUSIONS

Insurance under this Endorsement does not apply:

\* \* \* \* \* \* \* \* \* \* \* \*

(p) Under Coverage K to injury to or destruction of property owned, rented, occupied or used by or in the care, custody or control of the named Insured nor to the resultant loss of use thereof.

\* \* \* \* \* \* \* \* \* \* \* \*

ADDITIONAL INSURED: The City of Maryville, Missouri but only to the extent to which The City of Maryville, Missouri becomes legally obligated for injury or damage arising from negligence of Joe Rankin d/b/a Aviation Services and such insurance as is afforded under this policy shall not apply in respect to any liability of the City of Maryville, Missouri arising from or caused by any act or omission of the named Insured or any officer or employe thereof in the performance of Airport Manager duties."

———◆———

The evidence presented at the trial may be summarized as follows:

The plaintiff, Herbert Allison, was the owner of a Cessna Skyline Airplane, and on June 27, 1965 with his son as pilot, and he as a passenger, this plane was landed at the Maryville Airport and was left in an area on Tract No. 3 at a point not leased for Joe Rankin's exclusive use, but upon property used generally by the patrons of the airport. The keys were left in the aircraft and Allison told Joe Rankin to either tie the plane down or put it in a hangar, and Allison and his son left the airport for their home in Stanberry, Missouri. Allison testified that he did not give Rankin permission to taxi the plane. Rankin was to service such aircraft while it was at Maryville.

Somewhat later that day, there appeared to be a storm rising, and Rankin entered the Allison aircraft and started to taxi toward the National Guard Hangar. He had access to this hangar and permission from the National Guard to store planes there, if space was available therein. After taxiing the Allison plane for several hundred feet, it was turned over by a violent gust of wind and damaged to the extent of $10,106.00.

Rankin reported this to the defendant insurance company. Allison brought suit against Rankin, based upon various allega-

tions of negligence, and Rankin, through his personal attorney, demanded that the insurer defend him in said action and assume responsibility under its policy of insurance. This, the defendant refused to do, and a judgment was entered in favor of Allison against Joe Rankin by default in the Circuit Court of Nodaway County, Missouri at Maryville in Case No. L 4001 in the amount of $10,106.00. Upon this judgment becoming final, this action was instituted under Section 379.200 V.A.M.S. and was tried before the court without a jury.

The court entered a judgment on December 30, 1970 in favor of the plaintiff and against the defendant in the amount of $10,106.00 plus interest in the amount of $1,669.93. In connection with said judgment, the court below filed a written opinion, findings of fact and conclusions of law, as provided under Rule 73, Rules of Civil Procedure, V.A.M.R.

The court found that the plaintiff did not at any time suggest to Rankin that he taxi or operate the plane, and that the evidence failed to show that Rankin had either the express or implied authority to do so.

The court also found as conclusions of law that the plaintiff's loss was insured under Coverage K of the Airport Liability Endorsement No. 4 and that Exclusion (p) did not exclude the loss involved.

The court further found that as a matter of law, the burden of proving that the exclusion was applicable was upon the defendant and that such burden had not been met; that the exclusion provision was ambiguous and should be strictly construed against the insurer; that this ambiguity arose from the fact that the policy showed upon its face that Rankin, as Airport Manager, was in charge of the entire airport facilities and operations thereon, and that the insuring agreement K and Exclusion (p) were in direct conflict; that the evidence failed to show that Rankin was authorized to operate or taxi the Allison aircraft, and that unless such operation was

authorized, the exclusion could not apply; that the operation of the plane by Rankin was not a normal and customary use or operation thereof within the meaning of the exclusion; that the mere occupancy of the plane by Rankin did not bring the exclusion clause into operation; that a reasonable interpretation of the exclusion clause was that it excluded damages to property in which Rankin had a proprietary as contrasted with a possessory interest; that under the facts and circumstances of the case a reasonable interpretation of the exclusion clause was to construe it in the conjunctive rather than disjunctive, and that to adopt or give effect to the exclusion would be so repugnant to the insuring Clause K as to render the insurance a nullity.

Defendant's motion to amend the findings and judgment, or for a new trial, was overruled, and in due course this appeal followed.

The position of the appellant is that the Exclusion (p) was not ambiguous and was applicable to the Allison loss; that the court erred in holding that Rankin did not have consent and authority to taxi the aircraft; that the court erred in holding that Exclusion (p) contemplated a proprietary interest as opposed to a possessory interest; that the court erred in holding that the exclusion should be construed in the conjunctive rather than the disjunctive; and that the court erred in holding Exclusion (p) rendered the insuring Clause K a nullity.

So far as applicable here, Rule 73.01(d), Rules of Civil Procedure, defines our function in this appeal from the court-tried case as follows:

"* * * The appellate court shall review the case upon both the law and the evidence as in suits of an equitable nature. The judgment shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses. The appellate court shall consider any evidence which

was rejected by the trial court and duly preserved for the appeal when the appellate court believes such evidence to be admissible. * * * "

The able briefs before us and our own careful research have failed to reveal any Missouri decision involving Airport Liability insurance nor any helpful decisions from other jurisdictions. We are aided, however, in our approach to this problem by certain well-established rules applicable to the construction of insurance contracts generally.

We are dealing here with the effect of an exclusionary provision in the policy before us which appellant asserts withdraws the protection of its coverage under the facts in this case. The plaintiff-respondent, as judgment creditor of the insured, Rankin, stands in his shoes so far as this action is concerned. If the policy afforded coverage to Rankin, then the respondent-plaintiff is entitled (as the court below held) to have his judgment satisfied from the insurance.

■ When an insurer seeks to escape liability on its policy solely upon the basis of a policy exclusion (such as, Exclusion (p) before us), the burden of proof rests with the insurer to establish facts that make such exclusion applicable. Wendorff v. Missouri State Life Insurance Co., 318 Mo. 363, 1 S.W.2d 99; Kelso v. Kelso, Mo.Sup., 306 S.W.2d 534.

■■ Restrictive or exclusionary clauses in an insurance contract are to be strictly construed, and if ambiguous, a favorable construction for insured must be adopted. The contract terms and provisions must be viewed as a whole and a conclusion reached giving such contract a reasonable interpretation consonant with the apparent object and intent of the parties. Wendorff v. Missouri State Life Ins. Co., supra.

In the case of Greer v. Zurich Insurance Co., Mo.Sup., 441 S.W.2d 15 at l.c. 30, the court said:

" * * * In general, policies should be given a reasonable construction in accordance with their terms and should be interpreted to provide coverage when reasonably possible to do so rather than to defeat it."

■ Ambiguous provisions in an insurance policy cannot avail as a policy defense. Galati v. New Amsterdam Cas. Co., Mo. App., 381 S.W.2d 5, 8.

■ These rules of construction stem from the deep-seated principle that courts do not favor forfeitures, particularly where they are the result of technical provisions in insurance contracts and forfeitures are never permitted unless the right is clearly established. 45 C.J.S. Insurance § 473(1), pp. 150–151; Greer v. Zurich Ins. Co., Mo.Sup., 441 S.W.2d 15, 31.

■ By reason of the very nature of this type of action, the factual background of each case differs and it is incumbent upon us to apply these general rules of interpretation to the particular facts before us in this case. So applied, we have reached the conclusion that a violent and irreconcilable ambiguity exists between the insuring Clause K and Division No. 1 of the definition of hazards, on the one hand, and the Exclusion (p), on the other hand, in Endorsement No. 4. That being so, the ambiguity must be resolved in support of coverage.

We reach this conclusion by reason of the fact that to adopt the theory of appellant that Exclusion (p) precludes coverage under the facts in this record, we would, in effect, hold that there was no coverage of any kind afforded to Rankin under insuring Clause K. Stated differently, to so hold would render the insuring clause a nullity and completely disregard the clear intent of the contracting parties to afford Rankin airport liability cov-

erage for his operation at Maryville. We reach this conclusion because:

1. The Endorsement No. 4 shows upon its face that Rankin, the insured, was the lessee of the entire premises of the Maryville Municipal Airport and that he conducted thereon the business of "Airport Operation—Sales and Services".

2. Coverage K afforded Rankin coverage of $100,000.00 for property damage liability for which he might become legally obligated to pay as damages "because of injury to or destruction of property".

3. Under "Definition of Hazards, Division No. 1, Premises", is the clear and unambiguous declaration that accidents "happening" on insured's premises as described "in Item 2b", i. e. entire Maryville Municipal Airport, "resulting or arising from the ownership, maintenance or use of the above described premises *or the named Insured's business operations thereon.*" are covered by the insurance.

4. Under the terms of Rankin's lease with the City of Maryville, of which the insured was cognizant at the time of the issuance of the endorsement, Rankin was in complete charge of all airport operations, as more fully set forth in our statement of facts, supra, including aircraft services and the control of aircraft operation and air traffic in and out of the airport. We recognize the possible exception of the National Guard hangar as emphasized by appellant, but even as to it, Rankin had access to and permission to use the hangar.

5. Under the terms of his agreements, the nature of his functions and obligations, and his actual day-to-day operations, Rankin either owned, was in charge of, and had the "care, custody and control" of all physical property at the airport at all times. In addition, he conducted a business of servicing, repairing and furnishing parts and repairs to patrons' aircraft —the very operations insured and defined in the Endorsement.

6. The loss here involved to the Allison aircraft involved a service squarely within Rankin's business and within the insuring clauses of his policy— and, therefore, squarely within the contemplation, object and intent of the parties to the insurance contract.

7. To apply the interpretation of Exclusion (p), as urged by appellant, would result in the repugnant conclusion that no coverage was afforded under Coverage K to Rankin. We have sought in vain to determine an operation of Rankin's "business" which would not come within this exclusion if so applied, and counsel's brief suggests none.

8. We do not deem it necessary to find (nor particularly relevant) whether or not Rankin had express or implied permission to taxi the Allison aircraft. His doing so was still part of his "business" operations and therefore within the insuring Clause K.

We are not unmindful of the three decisions of this court relied upon by appellant in support of its position. These have been carefully re-examined and we have concluded that they are clearly distinguishable from the matter before us. Nothing we say here is intended to nor should be construed to in any way weaken or diminish the force and authority of those opinions. They were properly ruled upon the facts before this court in those cases, but do not constitute persuasive authority under the facts now before us in this case.

In the case of Northwestern Mutual Insurance Co. v. Haglund, Mo.App., 387 S.W.2d 230, an automobile owned by one Wasson was involved in a collision and damaged while being driven by Haglund with Wasson's permission. The Northwestern Mutual, Wasson's insurer under

collision coverage, paid Wasson's damage and then sued Haglund to recover its loss under its subrogation rights. Haglund was insured in Lumberman's Mutual Insurance Company and it declined coverage and refused to defend him. It was thereupon joined as a third party defendant. The court-tried case resulted in a judgment in favor of Northwestern against Haglund and a judgment over in favor of Haglund against Lumberman's. This court reversed upon the basis that Haglund's policy of liability insurance contained a valid exclusion exempting coverage "to injury or destruction of (1) property owned or transported by the insured or (2) property rented to or in charge of the insured other than a resident or private garage."

This court properly held that the exemption applied since the Wasson car was admittedly "in charge of" Haglund. No ambiguity was present in the Haglund case and this court adopted with approval the decision in Middlesex Mutual Fire Insurance Co. v. Ballard, La.App., 148 So.2d 865, involving an identical exclusionary clause and cited from the Ballard case the following (387 S.W.2d, l.c. 233):

> "'* * * If an insured desires coverage on his own automobile or such other property as may be transported, rented, or in his charge at the time of the damage thereto, as a result of a collision he must pay for collision insurance'."

The factual and legal differences between the Haglund case and the matter before us are apparent. Haglund involved the use of private automobiles and not a business operation; Haglund had no collision coverage and, of course, had paid no premium therefor; there was no ambiguity in nor conflict between the provisions of his policy; and obviously, Haglund was not misled as to the coverage extended.

In the case before us, a business enterprise necessarily involving the handling and servicing of non-owned property was involved; additional premiums were charged; the coverage was specifically ex-

tended and then sought to be excluded; a violent and irreconcilable ambiguity and conflict exists; the insurer has failed to sustain the burden of proof as to the exclusion and the result sought by the insurer would not reflect the true understanding and agreement of the parties to the insurance contract.

In Moore v. M.F.A. Mutual Insurance Co., 422 S.W.2d 357, this court adopted and followed the decision in Northwestern v. Haglund, supra, in a case where an insured had a "Farm Comprehensive Liability Insurance Policy." He was operating a self-propelled combine owned by another upon a public highway when it came into collision with a railroad train. The combine owner's insurance company paid the loss and brought suit against the operator of the combine, Moore. Moore's insurance company refused to defend him because its policy contained a property damage provision excluding liability for damage to property "under his care, custody or control." Moore's policy did not provide collision coverage of any kind. Moore successfully defended himself in the action brought by the owner's insurance carrier and then sued his own insurer for expenses and attorney's fees. Summary judgment was entered for defendant. This court affirmed upon the authority of Haglund. The evidentiary facts of course, were not fully developed nor available now, but we can assert with confidence that none of the facts, here so persuasive, were before either the trial or this appellate court in Moore. We do not consider this decision authoritative here.

A similar exclusionary clause was considered by this court in Kirchner v. Hartford Accident & Indemnity Co., Mo.App., 440 S.W.2d 751. The Kirchner case involved the assembly of steel construction on a building construction site, wherein the steel construction contractor sought a declaratory judgment declaring coverage under a "Comprehensive General-Automobile Liability" policy of insurance, which insured Kirchner against liability for dam-

ages to property caused by accident by automobile or otherwise, but which also contained a "care, custody and control" exclusion. This court in a very extensive and well-reasoned opinion properly held that the insured did not have "care, custody and control" of the building under construction and that, therefore, the exclusionary clause did not apply *under the facts in that case*. This court in Kirchner declined to rule on the claim of ambiguity of the exclusionary clause of the policy since such determination was not necessary to rule the case.

A case of persuasive interest here is the case of Aetna Casualty and Surety Company v. Haas, Mo.Sup., 422 S.W.2d 316 (cited by this court in Kirchner v. Hartford Accident & Indemnity Co., supra). In the Aetna case, the court held that an exclusionary provision in an insurance policy was latently ambiguous. In holding that the policy afforded coverage, the court in Aetna adopted as the rule in Missouri the following statement of the New Jersey appellate court (Boswell v. Travelers Indemnity Co., 120 A.2d 250, 253, 254), 422 S.W.2d l.c. 321:

> " 'Exclusion clauses are strictly construed against the insurer, especially if they are of uncertain import. An insurer may, of course, cut off liability under its policy with a clear language, but it cannot do so with that dulled by ambiguity. As with the provisions of the policy as a whole, so also with the exceptions to the liability of the insured, the language must be construed so as to give the insured the protection which he reasonably had a right to expect; and to that end any doubts, ambiguities and uncertainties arising out of the language used must be resolved in his favor'."

The appellant raises the further claim of error on the part of the trial court in admitting and considering evidence beyond the pleadings in the original damage action by the plaintiff against the insured, Rankin, and the evidence heard at the hearing therein, which resulted in the default judgment. Appellant refers to the testimony of the insured, Rankin, as to his purchase of the insurance involved, his negotiations with defendant's agent, his lease with the City of Maryville, his duties as airport manager, the events that occurred immediately prior to the accident, and the purpose of the Allison aircraft being at the airport.

We cannot agree with this position.

■ This action was essentially one in equity under the statute and required the court below to construe the contract of insurance wherein, as we have heretofore demonstrated, an ambiguity and conflict existed as between the insuring and exclusionary provisions. In order for the court to do this, he was required to ascertain and to give effect to the real intentions of the parties to the insurance contract. Pierce v. Business Men's Assurance Company of America, Mo.Sup., 333 S.W.2d 97, 100. It was not error for the court to consider matters other than the petition and the default hearing in the original suit in order to accomplish this. Such matters would include the facts known or which should have been known by the defendant-insurer as to Rankin's status and operation at the Maryville Airport. Zipkin v. Freeman, Mo.Sup. en Banc, 436 S.W.2d 753, 754; Marshall's U. S. Auto Supply, Inc. v. Maryland Casualty Co., 354 Mo. 455, 189 S.W.2d 529, 531; State ex rel. Inter-State Oil Co. v. Bland, 354 Mo. 622, 190 S.W.2d 227, 229.

For the reasons herein stated, the judgment of the court below was not "clearly erroneous", was for the right party, and it is affirmed.

All concur.