**MICHIGAN MUTUAL LIABILITY COMPANY, Plaintiff-Respondent,**

v.

**Gary W. STALLINGS and Robert Ward, Defendants-Appellants.**

**No. 9809.**

Missouri Court of Appeals,
Springfield District.

May 16, 1975.

Motion for Rehearing or to Transfer
Denied June 5, 1975.

Fielding Potashnick, Sikeston, James E. Spain, Bloomfield, for defendants-appellants.

Kenneth L. Dement, Sikeston, for plaintiff-respondent.

Before BILLINGS, C. J., and HOGAN and FLANIGAN, JJ.

FLANIGAN, Judge.

Michigan Mutual Liability Company, plaintiff-respondent, sought a declaratory judgment to the effect that its Auto-Gard Family Insurance Policy No. 63–2–302066 does not obligate plaintiff to defend a lawsuit brought by defendant-appellant Robert Ward against defendant-appellant Gary W. Stallings or to pay any judgment entered therein.

The defendants admitted that portion of the petition alleging the following: "On or about July 1, 1972, while both defendants were employed by and on active duty with the Missouri National Guard, defendant Robert Ward was a passenger in a 1945 Dodge three quarter ton truck which was owned by said Missouri National Guard, and which was being operated by defendant Gary W. Stallings in a generally easterly direction over U. S. Highway 60  .  .  . in Howell County, Missouri, which vehicle then and there allegedly overturned causing defendant Robert Ward certain bodily injuries. Robert Ward has made claim against defendant Gary W. Stallings for damages on account of said alleged accident and alleged injuries. On said date and prior thereto defendant Gary W. Stallings was also employed by one James V. Stallings as an accountant."

Stallings was the named insured in the policy. The period of the policy included July 1, 1972. The vehicle described in the policy (the "owned" automobile) was a 1972 Ford.

The petition and trial theory of the plaintiff advanced three independent grounds for a declaration of non-coverage. These grounds are:

1. The 1945 Dodge truck was not a "non-owned automobile" as that term is defined in the policy.

2. Coverage is excluded under Exclusion "f."

3. Even if the Dodge was a "non-owned" automobile, coverage is excluded under Exclusion "h(2)."

The following provisions of the policy are germane to the issues on this appeal:

[The company] agrees with the insured, named in the declarations  .  .  .

## PART I—LIABILITY

*Coverage A*—Bodily Injury Liability

To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:

.  A.  bodily injury  .  .  .  sustained by any person arising out of the ownership, maintenance or use of the owned automobile or any non-owned automobile, and the company shall defend any suit alleging such bodily injury  .  .  .  and seeking damages  .  .  .

*Persons Insured*

The following are insureds under Part I:

.  .  .  .  .

(b) with respect to a non-owned automobile,
    (1) the named insured,  .  .  .

*Definitions*

"named insured" means the individual named in Item 1 of the declarations .  .  .  ;

"insured" means a person or organization described under "Persons insured";  .  .

"non-owned automobile" means an automobile  .  .  .  not owned by or furnished for the regular use of  .  .  .  the named insured  .  .  .  ;

"private passenger automobile" means a four wheel private passenger, station wagon or jeep type automobile;  .  .  .

*Exclusions*

This policy does not apply under Part I:

. . . . .

(f) to bodily injury to any fellow employee of the insured injured in the course of his employment if such injury arises out of the use of an automobile in the business of his employer, but this exclusion does not apply to the named insured with respect to injury sustained by any such fellow employee;

. . . . .

(h) to a non-owned automobile while maintained or used by any person while such person is employed or otherwise engaged in

(1) the automobile business of the insured or of any other person or organization;

(2) any other business or occupation of the insured, but this exclusion (h)(2) does not apply to a private passenger automobile operated or occupied by the named insured. . .

The trial court, sitting without a jury, entered judgment in favor of the plaintiff and held that the plaintiff's second and third grounds were valid. The evidence presented to the trial court consisted only of the insurance policy itself and the depositions of Ward and Stallings. Those depositions, which were offered by the plaintiff, had been taken in Civil Action 7505, Circuit Court of Scott County, Missouri, Robert Ward, plaintiff, vs. Gary W. Stallings, defendant. In action No. 7505 Ward sought damages for personal injuries sustained by him arising out of the accident of July 1, 1972.

"The deference usually accorded the determination of a factual issue by a trial court because of its better position to judge

of the credibility of witnesses appearing before it is not applicable to cases submitted upon depositions and exhibits." Giokaris v. Kincaid, 331 S.W.2d 633, 635[1] (Mo.1960).

## WAS THE DODGE A "NON–OWNED AUTOMOBILE"?

The parties agree that the Dodge was owned by the Missouri National Guard, and not by Stallings. But that fact, standing alone, is not sufficient to qualify the Dodge as a "non-owned automobile" as that term is defined in the policy. It is also necessary that the Dodge be "an automobile not . . . furnished for the regular use of" Stallings. Kern v. Liberty Mut. Ins. Co., 398 F.2d 958, 961[3] (8th Cir. Mo.1968).

Plaintiff's policy contains no definition of the word "automobile."

In Bellerive Inv. Co. v. Kansas City, 321 Mo. 969, 13 S.W.2d 628, 638[13] (1929) the court stated that the usual, ordinary and common meaning of the word "automobile" was "a vehicle containing within its mechanism the motive fuel or means of self-propulsion." "Automobile" is the general name adopted by popular approval to denote all forms of self-propelled vehicles for use on the highways and streets, and the term is defined generally as meaning a self-propelled vehicle suitable for use on a street or roadway. 60 C.J.S. Motor Vehicles § 1, p. 152. See 74 A.L.R.2d 1264 (What is an 'automobile' or 'car' within coverage of automobile liability policy?). Thus, the Dodge was an automobile.

Was it "furnished for the regular use of Stallings"?

In State Farm Mut. Auto. Ins. Co. v. Western Cas. & Sur. Co., 477 S.W.2d 421 (Mo. banc 1972) our Supreme Court considered the applicability of a non-owned automobile clause, quoted marginally.[1]

1. "Non-Owned Automobile—means an automobile * * * not (i) owned by, (ii) registered in the name of, or (iii) furnished

or available for the frequent or regular use of the named insured, * * * other than a temporary substitute automobile." . .

The court quoted the following language from an annotation in 86 A.L.R.2d 937,[2] 940: "The purpose of the 'drive other cars' provision in an automobile liability policy is to cover occasional or incidental use of other cars without the payment of an additional premium, but to exclude the habitual use of other cars, which would increase the risk on the insurance company without a corresponding increase in the premium."

The court said that two tests had been used to determine whether a non-owned automobile had been furnished or available for frequent or regular use. One test is based "solely or at least primarily . . . [on] . . . the purpose for which the non-owned automobile was furnished, rather than on the quantum of its use." The other test is based on the "length or type of use rather than purpose for which the car was furnished."

At p. 424 the court said: "[W]e conclude that we should not limit ourselves either to a test of merely determining motive or purpose or one of simply measuring length and extent of availability of use. Rather, each case should be decided on its own facts, and the court should take into consideration the type and length of use, the purpose for which the non-owned automobile was furnished, and any other pertinent facts, including a determination of whether the use and purpose was in harmony with or violative of the objective of the 'non-owned automobile' clause."

The following evidence is found in the uncontradicted testimony of defendants Stallings and Ward contained in their depositions offered by plaintiff. Plaintiff is bound by this testimony. Orlann v. Laederich, 338 Mo. 783, 92 S.W.2d 190, 193[4] (1936); Riggin v. Riggin, 373 S.W.2d 633, 634[1] (Mo.App.1963).

Ward and Stallings were members of the Missouri National Guard, 1140th Engineering Battalion, Headquarters Co., located at Cape Girardeau, Missouri. This guard unit meets once a month for two days and, during the summer, has a two-week encampment. July 1, 1972, the date of the accident, was the thirteenth day of the encampment. The unit had been encamped at Camp Clark, Nevada, Missouri.

Ward has been in the unit five and one-half years. His rank was E–4, and he was a crane operator. Ward testified that in going from Cape Girardeau to Camp Clark he went in an army vehicle with three other guardsmen and he did some of the driving, although he was not assigned as a driver or assistant driver for that vehicle.

Stallings' rank was E–4. When asked what his primary job was in the National Guard, Stallings replied "summer camp I handle the refueling of the vehicles." When asked what was his "primary M.O.S." in the National Guard, Stallings replied "I was a heavy equipment mechanic at the armory; I was a, I don't know what the number is, water purification."

On the night before the accident Stallings was assigned as driver of the Dodge and Ward was assigned as an assistant driver. At 5:30 a. m. on July 1, Ward "got in the same vehicle with Stallings because we knew each other and there was another vehicle there with another two people with less rank than us." The latter personnel drove a dump truck which, according to Ward, was either a two and one-half ton or a five ton truck.

Only Ward and Stallings were in the Dodge on the return trip. The Dodge, which was a three quarter ton army vehicle with a canvas top and "with doors on the

The court said the "only real question" was the applicability of clause (iii).

2. The title of the annotation is "Exclusion from 'drive other cars' provision of automobile liability insurance policy of other automobile owned, hired, or regularly used by insured or member of his household." See also 83 A.L.R.2d 926: "What is a 'non-owned' automobile within the meaning of the coverage clause of an automobile liability policy."

side," contained some duffle bags and foot lockers of other members of the unit. Ward and Stallings alternated, in two-hour shifts, in driving the Dodge. Ward said there were two or three other vehicles in the Dodge's convoy. Ward and Stallings were under orders to take the Dodge and its load to the unit headquarters at Cape Girardeau, where they were scheduled to arrive on July 2, after an overnight stop near Van Buren, Missouri. According to Stallings there were 100 vehicles in the entire convoy but the section of the convoy which contained the Dodge had 10 vehicles.

This court now considers the factors set forth in State Farm, supra, 477 S.W.2d 421. With regard to the "type and length of use" of the Dodge, Ward and Stallings were alternating drivers on a trip which would have lasted approximately two days. There was no showing that either Ward or Stallings had ever driven or been assigned to the Dodge previously. Although Ward had done some of the driving of a similar vehicle in going to Camp Clark, the record contains no evidence that Stallings had done any such driving. Ward was a crane operator whose primary duty during the encampment period was acting as the colonel's orderly. There was no showing that the duties of Stallings at the summer camp or in the monthly meetings involved the driving of the Dodge or other vehicles. Stallings' assignment at the armory was that of "heavy equipment mechanic" and Ward testified that he considered a three quarter ton truck to be a "light vehicle."

Plaintiff's petition alleged "that said 1945 Dodge three quarter ton truck was not a 'non-owned automobile' within the meaning of said policy of insurance." There is substantial authority for the proposition that plaintiff, having instituted the action and having made that allegation, assumed the burden of proof on that issue.[3] It is not necessary for this court to determine whether that line of authorities is consistent with the law of Missouri.

The Dodge was assigned to Stallings one day before the accident; he and Ward alternated as drivers of it on the accident date; Stallings' duty at the summer camp was that of handling the refueling of vehicles; his assignment at the armory was that of "heavy equipment mechanic" and the Dodge did not fit in that category. From these facts it is reasonable to infer that the operation by Stallings of the Dodge was an isolated occurrence; certainly there is no evidence that it was a regular occurrence. The record contains nothing to justify a finding that Stallings' use of the Dodge was habitual. His operation of it, accordingly, was "in harmony with . . . the objective of the 'non-owned automobile' clause" as that language is used in State Farm, supra. It could properly be regarded as "occasional or incidental use" of the Dodge.

"Although the insured does not use any one vehicle regularly, his use of one of a fleet of vehicles may constitute 'regular use' within the meaning of such a provision." 7 Am.Jur.2d Auto. Ins. § 106, p. 417. But here there is no evidence that Stallings

---

**3.** State Auto. & Cas. Und. v. Ishmael, 202 N.W.2d 384 (S.D.1972), involving the identical policy provision; Reliance Life Ins. Co. v. Fancher, 30 F.Supp. 264 (D.C.Mo.1939); Travelers Ins. Co. v. Drumheller, 25 F.Supp. 606 (D.C.Mo.1938); Reliance Life Ins. Co. v. Burgess, 112 F.2d 234 (C.A.8 1940); N. Y. Life Ins. Co. v. Stoner, 109 F.2d 874 (C.A.8 1940); Aetna Cas. & Sur. Co. v. Martin Bros. C. & T. P. Corp., 256 F.Supp. 145 (D.C.Or.1966); Concord Ins. Co. v. Miles, 118 N.J.Super. 551, 289 A.2d 267 (1972); Hanover Ins. Group v. Cameron, 122 N.J.Super. 51, 298 A.2d 715 (1973); Liberty Mutual Ins. Co. v. Sweeney, 216 F.2d 209 (C.A.3 1954); Hartford A. & I. Co. v. Lougee, 89 N.H. 222, 196 A. 267 (1938); 26 C.J.S. Declaratory Judgments § 148, p. 353 (Note 43); Wright and Miller, Fed.Prac. and Proc., Vol. 10, § 2770, p. 863 (Notes 20 and 21). See annotation in 23 A.L.R.2d 1243 (burden of proof in actions under general declaratory judgment acts.)

used regularly vehicles from a National Guard fleet.

■ This court concludes that the Dodge was a "non-owned automobile."

## IS COVERAGE EXCLUDED UNDER EXCLUSION (f)?

■ The second paragraph of this opinion quotes a portion of the petition which was admitted by the defendants and which alleged that both defendants "on or about July 1, 1972 . . . were employed by and on active duty with the Missouri National Guard." Whether or not the employment so admitted is the type of employment referred to in Exclusion (f) need not be explored because, in either event, the exclusion is inoperative. If National Guard employment is not the type of employment referred to by Exclusion (f), the exclusion is not involved at all. If National Guard employment is the type of employment referred to by the portion of Exclusion (f) which precedes the comma, the portion of it which follows the comma renders Exclusion (f) inapplicable because, under this assumption, Ward is a fellow employee of Stallings and injury to Ward is involved.

## IS COVERAGE EXCLUDED UNDER EXCLUSION (h)(2)?

■ "When an insurer seeks to escape liability on its policy solely upon the basis of a policy exclusion . . ., the burden of proof rests with the insurer to establish facts that make such exclusion applicable. Wendorff v: Missouri State Life Insurance Co., 318 Mo. 363, 1 S.W.2d 99; Kelso v. Kelso, Mo.Sup., 306 S.W.2d 534." Allison v. National Insurance Underwriters, 487 S.W.2d 257, 262[1] (Mo.App.1972). The Allison case also lists familiar rules which govern the construction of insurance policies, including their exclusionary clauses. This court must adhere to those rules but need not restate them.

Plaintiff relies on Exclusion (h)(2). For that reliance to be justified plaintiff has the burden of proving that the Dodge was used by Stallings while Stallings was "employed or otherwise engaged in any other business or occupation" of Stallings, and plaintiff must prove that the Dodge was not "a private passenger automobile."

At the time of the accident Stallings was engaged in the performance of his duties as a member of the National Guard and he was being paid therefor. But was he engaged in a "business or occupation of the insured"? Policy provisions similar to or identical with Exclusion (h)(2) have given rise to considerable litigation and most of the cases are collected in 85 A.L.R.2d 502 (Construction of provisions excluding automobile used in insured's "business or occupation" from non-owned automobile coverage of auto. liab. policy).

Four cases dealing with members of the National Guard are: Voelker v. Travelers Indemnity Company, 260 F.2d 275 (7th Cir. 1958), Allstate Insurance Company v. Hoffman, 21 Ill.App.2d 314, 158 N.E.2d 428 (1959), Blackwell v. United States, 321 F.2d 96 (5th Cir. 1963), and Glisson v. State Farm Mut. Auto. Ins. Co., 246 S.C. 76, 142 S.E.2d 447 (1965).

In Voelker, Allstate and Blackwell policy provisions substantially similar to Exclusion (h)(2) were the basis for holdings of non-coverage. In Glisson the exclusion was held inapplicable and coverage was found.

■ Like witnesses, foreign authorities should be weighed and not counted. This court adopts the views expressed in Glisson.

In Voelker, at p. 278, the court stated that the insurance company's freedom from liability under the exclusion "is not free from doubt," but held that a National Guard truck, driven by the insured, was being "used in a business * * * of such named insured." "It was being used in the business of the National Guard, of which plaintiff was a member. In discharging his

obligation to the National Guard, we think that in driving the truck he was not only engaged in its business but in his own business as well. . . . Neither do we think that the fact that plaintiff had other employment upon which he depended for his livelihood detracts from the view that he was also engaged in a business as a member of the National Guard. A person during the same period can be engaged in more than one business."

In Voelker the court stated that it was "reasonable to think that the truck was furnished (Voelker) for his 'regular use' while acting in the performance of his duties as a member of the National Guard." Such a finding, if made here, would disqualify the Dodge from being a "non-owned automobile" and thus Voelker would not have had coverage under a Michigan Mutual policy.

In Allstate the named insured was Hoffman. He was involved in an accident while operating a National Guard truck during a two-week encampment. The court said at p. 430: "It is not uncommon for an insured to have a business in addition to his regular and customary occupation which he may pursue primarily or even wholly for purposes other than pecuniary gain; but such collateral business would nonetheless constitute a business or an occupation while so pursued."

But Allstate was a 2–1 decision. Justice Bryant, who concurred solely in the result, found himself "in complete disagreement" with the majority opinion's interpretation of the exclusion. He felt that the words "in the business or occupation of the named insured" refer to a man's vocation and not to his avocation, and that part time National Guard activity was only the latter.

In Blackwell it was held that National Guard training activity, during the course of which a collision occurred, was a business or occupation of the insured who was a

guardsman driving a National Guard vehicle.

However, in Glisson, the Supreme Court of South Carolina, after giving due consideration to the holdings in Voelker, Allstate and Blackwell, held that Clyde Cheezem, a Methodist minister on temporary duty with the National Guard, was not using a guard vehicle "in the business or occupation" of Cheezem at the time of the accident and coverage was not excluded. The court said at p. 450: "Here Cheezem's primary 'business or occupation' is that of a Methodist Minister, and it is from this pursuit that it is assumed he obtains his livelihood. He is not a full-time employee of the South Carolina National Guard, although he does receive compensation for such duty and training in which he may participate.

"We are not unmindful of the fact that during the same period a person can engage in more than one business or occupation. However, we are of opinion that participation in National Guard activities, other than on a full-time basis, is not such a 'business or occupation' so as to be encompassed by the policy provisions under consideration. As used in the policy the phrase 'in the business or occupation of the named insured' refers to a man's vocation and not to his avocation. See concurring opinion in Hoffman case, supra, 158 N.E.2d 428."

Stallings' participation in National Guard activities, although a commendable pursuit and one in the national interest, did not constitute a "business or occupation" of Stallings as that language is used in Exclusion (h)(2). The "business or occupation" of Stallings, and the only one which the record reflects, was that of an accountant.

This court does not feel that the value of Glisson as a precedent is weakened by the fact that in Glisson coverage was excluded with respect to non-owned automobiles "used in *the* business or occupation" of the named insured," while in the case at bar

Exclusion (h)(2) uses the language *"any other* business or occupation of the named insured." Glisson holds that temporary duty with the National Guard is an avocation and not a vocation, and only the latter is embraced by the language "business or occupation."

Indeed it can be argued that the word "other" was inserted in (h)(2) because of the reference, in (h)(1), to *the* automobile business. In other words "any other business" as used in (h)(2) could be interpreted to mean "the business of the insured other than the automobile business." [4] But this court's construction of (h)(2), in compliance with the rules expressed in Allison v. National Insurance Underwriters, supra, 487 S.W.2d 257, 262[1] does not depend upon the validity of that argument.

Plaintiff's reliance on Exclusion (h)(2) is unjustified. The following cases, involving similar provisions though not involving National Guardsmen, are consistent with this holding: Bowen v. Merchants Mut. Cas. Co., 99 N.H. 107, 107 A.2d 379 (1954), Globe Indemnity Company, New York, N. Y. v. Jett, 367 S.W.2d 396 (Tex.Civ.App.1963), Hartford A. & I. Co. v. Larges, 232 Cal. App.2d 195, 43 Cal.Rptr. 44 (1965), and Helmich v. Northwestern Mut. Ins. Co., 376 F.2d 420 (7th Cir. 1967).

Accordingly it is unnecessary to consider whether the Dodge was "a private passenger automobile."

The judgment is reversed and the cause remanded with directions to enter a declaratory judgment in accordance with the views herein expressed.

All concur.

---

4. Plaintiff's policy defines "automobile business" as "the business or occupation of selling, repairing, servicing, storing or parking automobiles."