Meyer, J.
(dissenting). The order of the Appellate Division should be reversed and the order of Special Term should be reinstated,[1] the county having failed to produce evidentiary proof sufficient to require a trial on the issue of care, custody or control within the meaning of the policy exclusion.
The fallacy in the reasoning of the Appellate Division, adopted by the majority, is in its conclusion, on the law, that the written agreement between the county and the sponsors of the bridal show limited the county’s security obligation to the day of the performance. The agreement required the sponsors to reimburse the county for “all expenses for security in relation to the Licensee’s performance” (emphasis supplied). Security in relation to the performance would necessarily be limited to security on the day of the performance only if all activity relating to the performance took place on that day. Because there could be no performance without the displays for the show having been set up, the setup activity is related to the performance in any reasonable sense of the words “in relation to” and, therefore, security in relation to the performance may include security beginning with the setup. That the county understood that it did and so agreed is evident from the fact that it permitted the show to be set up on the day before the public performance, the fact that the contract form, which it drew, elsewhere referred to the day of the performance as “the Presentation” and specified the date of “the Presentation” as “January 6, 1980,” and the fact that the bill submitted by the county to the sponsors for security included the wages of both the regular guards who were on duty during the setup period the *762 evening before the day of the performance and the additional security personnel specially hired for the day of the performance only.
Because the words “in relation to” are themselves ambiguous, and all the more so in view of the contract’s use of the words “the Presentation” to indicate the day of performance, parol evidence was admissible, notwithstanding the merger clause in the contract, to explain the meaning of “in relation to the Licensee’s performance” (Richardson, Evidence [Prince, 10th ed], § 625; Fisch, New York Evidence [2d ed], § 58). The testimony of the sponsor’s representative — that she had specifically asked the county for security on Saturday because there would be merchandise there on Saturday and had been assured that there would be security there on both Saturday and Sunday — would, therefore, present an issue for the trier of fact were it not for the county’s failure to come forth with evidentiary proof in contravention of that testimony (Zuckerman v City of New York, 49 NY2d 557).
The Appellate Division’s additional rationale — that “defendant presumably ascertained what the operation of the exhibition it insured entailed, including the necessity for bringing merchandise to the arena the day before the exhibition” (88 AD2d, p 721) — not only finds no support whatsoever in the record, but also is a non sequitur. The policy was for comprehensive general liability insurance and, therefore, covered both personal injury and property damage. Moreover, it contained 15 separate exclusions of specified types of property damage, each of which excluded coverage for the risk of damage to the merchandise to be shown in the exhibit. A more potent argument would be that the insurer by failing to disclaim as to the sponsors has waived its care, custody and control exclusion because the security guard, whose time was being paid for by the sponsors, was a special employee of the sponsors (cf. Delisa v Arthur F. Schmidt, Inc., 285 NY 314; see PJI 2:238, and comment), but that possibility, though dimly suggested in the county’s papers, was not considered by the courts below and is not before us. To tax the carrier, however, with the obligation specifically to exclude coverage for damage to property which the printed provisions of its policy ex *763 pressly excludes is to turn the rule of Pimpinello v Swift & Co. (253 NY 159) on its head, at least with respect to insurance carriers. There may be cases in which the facts would justify that result, but the county has not shown this to be such a case and absent such a demonstration the courts are not justified in rewriting the policy. Particularly is this so, in light of the fact that the policy was issued three days in advance of the exhibition, for it follows that, if presumptions are to be indulged, the policy presumably was available for review by the sponsors and the county beforehand but was not objected to by either.[2] Allison v National Ins. Underwriters (487 SW2d 257 [Mo]), relied on by the Appellate Division majority, is distinguishable because there the handling of nonowned property which the insured sought to bring within the exclusion was part of the coverage for which the insured had paid an extra premium and as to which the insurer had extended specific coverage.
Finally, the county’s suggestion that the policy exclusion would only apply if it had exclusive control, as distinct from possession, of the automobile that was damaged affords no basis for denial of summary judgment to the carrier. It is not determinative, as the carrier suggests, that most of the cases on which the county relies involved real rather than personal property (Dubay v Trans-America Ins. Co., 75 AD2d 312, 318, mot for lv to app den 51 NY2d 709; see, also, North Amer. Iron & Steel Co. v Isaacson Steel Erectors, 36 AD2d 770, 771, affd 30 NY2d 640). It is rather, as pointed out in Dubay (supra; see, also, Ann., 8 ALR4th 563, 583), the nature of the property and the insured’s relation to it which are determinative and which distinguish those cases. Thus in Greater N. Y. Mut. Ins. Co. v Professional Security Bur. (61 AD2d 975), Security Bureau, the insured, had no key to the building that was damaged, was not authorized to enter the building, and was subject to the orders of the owner’s director of *764 security; in Neville v Continental Cas. Co. (26 AD2d 853) plaintiff, repairing a wheel on a trailer, was held not to have care, custody or control of the cargo on the trailer damaged by a fire started by plaintiff’s use of a blowtorch, because the trailer driver remained in charge of the cargo and never relinquished the keys to the trailer; in Employers’ Mut. Liab. Ins. Co. of Wis. v Puryear Wood Prods. Co. (247 Ark 673) the truck had been left on the insured’s premises with the keys in it but under instruction, which the court found determinative, that insured was not to move the truck but to call the owner back if it was necessary to move it; and in Rochester Woodcraft Shop v General Acc. Fire & LifeAssur. Corp. (35 AD2d 186) the trailer had been left on insured’s premises without any obligation on the insured’s part to guard or safely maintain it.
Though exclusivity of control will bring property within the exclusion, exclusivity is not a sine qua non of exclusion. The exclusion may be applicable whether the insured’s control is exclusive or in conjunction with others (Hardware Mut. Cas. Co. v Mason-Moore-Tracy, Inc., 194 F2d 173, 175-176; see Monari v Surfside Boat Club, 469 F2d 9; International Derrick & Equip. Co. v Buxbaum, 240 F2d 536; Cooke, Care, Custody or Control Exclusions, 1959 Ins LJ 7, 13), if the insured’s relationship to the property is such as to constitute control. Having failed to contest the evidence presented by the carrier that the county undertook to provide security on both January 5 and 6, the county is in the position of arguing that, although it had so undertaken, although the arena and the car and other exhibition merchandise within it were in the exclusive possession of its security guard and although the keys to the car were known by the county’s events co-ordinator to have been left in the car and, therefore, were likewise within the county’s possession, the county’s relationship to the car was not sufficient to constitute care, custody or control. The answer lies in the following quotation from Warner Corp. v Burns Int. Security Servs. (527 F2d 1025, 1030; see, also, Ann., 8 ALR4th 563, 582) holding a watchman service to be within the exclusion, though there was no bailment to the guard service of the goods in the warehouse the service had contracted to guard: “The in *765 stant case presents a situation where intimate physical handling is minimal, but the right and need to exclude others is inseparable from the nature of the protective service being rendered. There is nothing to suggest that at the time of the fire, Burns’ power to exclude others from the warehouse was being shared with anyone else.”
To deny applicability of the exclusion in this case is to impose upon the carrier liability for which it has not received a premium, and for a fault which is chargeable to the sponsors or to the county but not to the carrier. There should, therefore, be a reversal.
Order affirmed, etc.

. Appellant’s brief in this court makes no issue of so much of the Special Term order as required it to pay the county’s cost to defend up to July 23, 1981, the date of Special Term’s decision. The county has contented itself with citing the dictum from Sturges Mfg. Co. v Utica Mut. Ins. Co. (37 NY2d 69, 74), which supports that requirement. The propriety of that part of the order, therefore, is not considered.

. That the sponsors may not properly have met their obligation under the license agreement to provide property damage insurance for the county, if that be the result, is a matter between the sponsors and the county which cannot, however, affect the carrier’s obligation absent a factual demonstration that the carrier represented that the policy issued met that contract obligation.